In the Matter of the Probate of the Will of MARY O'HARA, deceased.

MARY O'HARA et al., Appellants, *v.* WILLIAM H. DUDLEY et al., Respondents.

Where a person, even by silent acquiescence, encourages a testator to make a devise or bequest to him, with a declared expectation that he will apply it for the benefit of others, this has the force and effect of an express promise so to apply it, as if he does not intend so to do, the silent acquiescence is a fraud.

Where the gift is to several as joint tenants and the promise to carry out the declared purpose of the testator is made by one of them it is obligatory upon all.

In the case of such a declared intention and promise, if the testator has named some certain and definite beneficiary, capable of taking the provision intended, the law fastens upon the devisee or legatee a trust which equity, in case of his refusal to perform, will enforce on the ground of fraud.

If, however, the uses enjoined are for the benefit of persons incapable of taking, or of a character in direct violation of the law of the State, if the devisee or legatee repudiates his obligations, this is a fraud upon the testator; if he is willing to perform, his so doing would be both a fraud upon the law and against the heirs and next of kin, and equity will for their protection in either case fasten a trust *ex maleficio* upon the devisee or legatee.

M., by her will, gave the bulk of her estate to three persons, who were her lawyer, her doctor, and her priest, absolutely as tenants in common. It

was not intended by her to give to the persons named any beneficial interest, but her design was to devote the property to certain charitable purposes; this she was advised could not be done by express provision in her will, but only by such an absolute gift to individuals, to whose honor she could confide the execution of her purpose, She signed a letter of instructions, cotemporaneous with the will, addressed to the legatees and devisees, stating the reason for the gift and dictating the purpose, which was in substance that during their lives, and after their deaths by some permanent arrangement to be made by them, the income of specified portions of the fund should be given to indeterminate persons of their selection, and any surplus of income to such charities as they might select. The will was executed in reliance upon a promise of the legatees to apply the fund faithfully and honorably to the charitable uses so specified. In an action to establish a trust which, failing as to the beneficiaries, should result to the heirs at law and next of kin, *held*, that the gift could not be sustained as an absolute one to the persons named, as this would be a fraud upon the testatrix ; that the secret trust attempted to be created could not be enforced, nor would equity permit it to be carried out, as it was in violation of the statute against perpetuities, but would impose a trust upon the fund for the benefit of the heirs and next of kin ; and that therefore the action was properly brought.

(Argued February 7, 1884; decided April 15, 1884.)

THESE are appeals, in the matter first entitled, from a judgment of the General Term of the Supreme Court, entered upon an order made December 17, 1882, which affirmed a decree of the surrogate of the county of Kings, admitting to probate the will of Mary O'Hara, deceased; in the action second entitled the appeal is from a judgment of said General Term, entered upon an order made June 1, 1883, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

The nature of said action and the material facts are stated in the opinion.

*Geo. H. Starr* and *Samuel D. Morris* for appellants. The language of the letters, delivered to and accepted by the defendants, is the highest, best evidence of the intentions of the testatrix (within all the rules of evidence), and the verbal declarations of the defendants now made, in so far as they

tend to vary, or contradict, or modify the meaning or force of the language of the letters, should go for nought. (*Jones* v. *Jones*, 10 Hun, 442; *Grierson* v. *Mason*, 60 N. Y. 397; *Jones* v. *Bradley*, L. R., 3 Eq. Cas. 635; L. R., 8 Ch. Div. 440; *Williams* v. *Fitch*, 18 N. Y. 547–552; *Oliffe* v. *Welles*, 130 Mass. 224; *Williams* v. *Vreeland*, 32 N. J. 135, 734; *Clark* v. *Leupp*, 88 N. Y. 229; *Tracy* v. *Tallmage*, 14 id. 181; *Downing* v. *Marshall*, 23 id. 387.) The letters and all the provisions thereof are mandatory and not precatory. (*Williams* v. *Fitch*, 18 N. Y. 546; *Williams* v. *Vreeland*, 32 N. J. 135, 734; *Glass* v. *Hulbert*, 102 Mass. 39; *Walgrave* v. *Tebbs*, 2 K. & J. 321; *Drakefield* v. *Wilks*, 3 Atk. 540; *Reech* v. *Kennegal*, 1 Ves. Sr. 122; *Hoge* v. *Hoge*, 1 Watts [Penn.], 214–217; *Muckleston* v. *Brown*, 6 Ves. 51; *Russell* v. *Jackson*, 10 Hare, 204; *Strickland* v. *Aldridge*, 9 Ves. 515; *Tee* v. *Ferris*, 2 K. & J. 357; *Boson* v. *Stathan*, 1 Eden, 508; *Mose* v. *Cooper*, 1 J. & H. 352; *McCormick* v. *Grogan*, L. R., 4 H. of L. 82; *Jones* v. *Badley*, L. R., 3 Eq. Cas. 635–641, 658; *Rowbotham* v. *Dunnett*, L. R., 8 Ch. Div. 430–443; *Walgrave* v. *Tebbs*, 2 K. & J. 313.) Where devisees take as "joint tenants," the act and promise of one binds them all. (*Tee* v. *Ferris*, 2 K. & J. 367.) A devise to "joint tenants" is an indication of a trust. (*Saltmarsh* v. *Barrett*, 3 De G., F. & J. 279; *Hooker* v. *Oxford*, 33 Mich. 453; *Moss* v. *Cooper*, 1 J. & H. 352; *Huguenin* v. *Basely*, 14 Ves. 289; *Jones* v. *Badley*, L. R., 3 Eq. Cas. 635–641–658; *Horn* v. *Pullman*, 10 Hun, 473; 72 N. Y. 278, 279; 1 Greenl. on Ev., § 174; *Shailer* v. *Bumstead*, 99 Mass. 197–8; *Atkins* v. *Sanger*, 1 Pick. 192; *Smith* v. *Sargent*, 2 Hun, 107; *Walgrave* v. *Tebbs*, 2 K. & J. 321–2; *Fowler* v. *Gold*, 67 N. Y. 143; *Crans* v. *Hunter*, 28 id. 393–5; *Krumm* v. *Beach*, 25 Hun, 293–297; *F. L. & T. Co.* v. *Walworth*, 1 Comst. 447.) The provisions, or so-called trusts contained in the letters are all invalid. (2 R. S. [6th ed.] 1106, § 55; 1101, § 15; 1167, § 1; *Schettler* v. *Smith*, 41 N. Y. 334–5; *Adams* v. *Perry*, 43 id. 497–500; *Garvey* v. *McDevitt*, 72 id. 561; *Levy* v. *Levy*, 33 id. 101, 103; *Dashiel* v. *Atty.-*

*Gen.*, 5 H. & J. 400; *Prichard* v. *Thompson*, 29 Hun, 296, 297; *Garvey* v. *McDevitt*, 72 N. Y. 563–4; *Kane* v. *Gott*, 24 Wend. 653; *Graff* v. *Bennett*, 31 N. Y. 9; *Campbell* v. *Foster*, 35 id. 371; *Vesey* v. *Johnson*, 1 S. & S. 69; *Fowler* v. *Garlike*, R. & M. 232; *Ellis* v. *Shelby*, M. & C. 286–290; *Oliffe* v. *Wells*, 130 Mass. 224.) The doctrine of equity which declares that a trust exists in such a case prevails to the same extent, and has the same force and effect in the State of New York as elsewhere. ( *Walgrave* v. *Tebbs*, 2 K. & J. 321–322; *Glass* v. *Hulbert*, 102 Mass. 39, 40, 43; *Brown* v. *Lynch*, 1 Paige, 147, 158; *Williams* v. *Fitch*, 18 N. Y. 548; *Pickett* v. *Logan*, 14 Ves. 234; *Barnesby* v. *Powell*, 1 id. 289; *Young* v. *Peachy*, 2 Atk. 354; *Thynn* v. *Thynn*, 1 Vern. 296; *Devinish* v. *Baines*, Prec. in Ch. 3; *Chamberlain* v. *Chamberlain*, 2 Eq. Ca. Abr. 43; *Reech* v. *Kennegal*, 1 Ves. 124; *Derokeford* v. *Wilks*, 3 Atk. 539; *Strickland* v. *Aldrige*, 9 Ves. 516; *Mestaer* v. *Gillespie*, 11 id. 626; *Hoge* v. *Hoge*, 1 Watts [Penn.], 214–218; *Reech* v. *Kennegal*, 1 Ves. Sr. 122; *Easterly* v. *Barbour*, 65 N. Y. 262; *Randall* v. *Dusenberry*, 39 Sup. Ct. 180; 63 N. Y. 645; *Martin* v. *Funk*, 75 id. 134; *Mad. Ave. Bap. Ch.* v. *Oliver St. Bap. Ch.*, 73 id. 90; *Bissell* v. *M. S. R. R.*, 22 id. 258, 259.) The whole residuary clause, being the fruit or result of a base agreement, should be adjudged void, and set aside on grounds of public policy. (3 R. S., chap. 6, art. 3, § 38, p. 63; *Huguenin* v. *Basely*, 14 Ves. 278; *Tyler* v. *Gardiner*, 35 N. Y. 595; *Tracy* v. *Tallmadge*, 14 id. 181, 193–218.) It was error for the surrogate and for the court below to avoid the consideration upon the question of undue influence of the actual legal effect of the letters of instructions taken in connection with what they represented the effect to be. (*Fellows* v. *Hermans*, 4 Lans. 243, 246.) In considering what the legal advisers of the testatrix did lead her to believe, the contents of the letters are the highest and best evidence. (*Jones* v. *Jones*, 10 Hun, 442; *Grierson* v. *Mason*, 60 N. Y. 397.) Where a party has procured from a testator a devise in a will to himself, under a promise (even if a verbal promise only) to use it for the bene-

fit of another, it is a case of trust. ( *Walgrave* v. *Tebbs*, 2 K. & J. 321, 322; *Reech* v. *Kennegal*, 1 Ves. Sr. 122; *Williams* v. *Fitch*, 18 N. Y. 546; *Muckleston* v. *Brown*, 6 Ves. Jr. 52–69; *Russell* v. *Jackson*, 10 Hare, 198; *R. Shultz Appeal*, 80 Penn. St. 397; *Hooker* v. *Axford*, 33 Mich. 453; *Fellows* v. *Hermans*, 4 Lans. 243–6.) A trust to a corporation, which is within the general purposes of its charter, is as valid as an absolute legacy. It would not be void for uncertainty. ( *Vidal* v. *Gerald*, 2 How. [U. S.] 187; *Adams* v. *Perry*, 43 N. Y. 493–495; *Power* v. *Cassiday*, 79 id. 607; *Curran* v. *Fanning*, 13 Hun, 469; *Prichard* v. *Thompson*, 29 id. 296.) Where the trust provisions of the letters are invalid, or illegal, a trust results for the heirs or next of kin. ( *Muckleston* v. *Brown*, 6 Ves. 51; *Russell* v. *Jackson*, 10 Hare, 204; *Strickland* v. *Aldridge*, 9 Ves. 515; *Tee* v. *Ferris*, 2 K. & J. 357; *Boson* v. *Stathan*, 1 Ed. 508; *Moss* v. *Cooper*, 1 J. & H. 352; *McCormick* v. *Grogan*, L. R., 4 H. of L. 82; *Jones* v. *Bodley*, L. R., 3 Eq. Cas. 635–641–658; *Rowbotham* v. *Dunnett*, L. R., 8 Ch. Div. 430–443; *Walgrave* v. *Tebbs*, 2 K. & J. 313; *Saltmarsh* v. *Barrett*, 3 De G., F. & J. 279; *Hooker* v. *Oxford*, 33 Mich. 453; *Moss* v. *Cooper*, 1 J. & H. 352; *Huguenin* v. *Basely*, 14 Ves. 289; *Jones* v. *Badley*, L. R., 3 Eq. Cas. 635–641–658; *Horn* v. *Pullman*, 10 Hun, 473; 72 N. Y. 278, 279; 1 Greenl. on Ev., § 174; *Shailer* v. *Bumstead*, 99 Mass. 197–8; *Atkins* v. *Sanger*, 1 Pick. 192; *Smith* v. *Sargent*, 2 Hun, 107.) The provisions, or so-called trusts, contained in the letters are all invalid. (2 R. S. [6th ed.] 1106, § 55; 1101, § 15; 1167, § 1; *Schettler* v. *Smith*, 41 N. Y. 334–5; *Adams* v. *Perry*, 43 id. 497–500; *Garvey* v. *McDevitt*, 72 id. 561; *Levy* v. *Levy*, 33 id. 101, 103; *Dashiel* v. *Atty.-Gen.*, 5 H. & J. 400; *Prichard* v. *Thompson*, 29 Hun, 296, 297; *Kane* v. *Gott*, 24 Wend. 653; *Graff* v. *Bennett*, 31 N. Y. 9; *Campbell* v. *Foster*, 35 id. 371; *Vesey* v. *Johnson*, 1 S. & S. 69; *Fowler* v. *Garlike*, 1 R. & M. 232; *Ellis* v. *Shelby*, M. & C. 286–290; *Oliffe* v. *Wells*, 130 Mass. 224.) The scheme being illegal is against public policy,

and the procuration of the will by such means necessarily in-
volved undue influence. It is a conclusion both of law and
fact. (*Muckelstone* v. *Brown*, 6 Ves. Jr. '65, 69 ; *Boson* v.
*Statham*, 1 Cox's Ch. 13, 20 ; *Schultz Appeal Case*, 80 Penn.
St. 397 ; *Downing* v. *Marshall*, 23 N. Y. 386, 387 ; *Tracy* v.
*Talmage*, 14 id. 141 ; *Holmes* v. *Mead*, 52 id. 540 ; *Fellows* v.
*Heermans*, 4 Lans. 244 ; *President* v. *T. & L. R. R.*, 7 id.
247–8 ; *Knapp* v. *Warner*, 57 N. Y. 668 ; *Russell* v. *Winne*, 37
id. 595 ; *Way* v. *East*, 2 Drew, 44, 67 ; *Wight* v. *Douglass*, 7 N.
Y. 574 ; *Atty.-Gen.* v. *Poulden*, 8 Simons, 472 ; *Harford* v.
*Browning*, 1 Cox, 302 ; *Morris* v. *Whitcher*, 20 N. Y. 41, 45 ;
*Whitbeck* v. *Winne*, 16 id. 532.) The decree of probate
should be set aside, and a trial ordered before a jury. (*Marx*
v. *McGlynn*, 88 N. Y. 370–374 ; 4 Redf. 455 ; *Tyler* v. *Gard-
ner*, 35 N. Y. 559–597 ; *Delafield* v. *Parish*, 25 id. ; *Darry*
v. *Briton*, 1 Curtis' Eccl. 637 ; *Nesbit* v. *Lockman*, 34 N. Y.
67 ; *Welsh Case*, 1 Redf. 239 ; *Vreeland* v. *McClelland*, 1
Bradf. 420 ; *Calhoun Case*, 2 Redf. 34 ; *Fagan* v. *Dugan*,
id. 341 ; *McLaughlin* v. *McDevitt*, 63 N. Y. 213–220 ; *Hop-
per Case*, 33 id. 620–641 ; *Rollwagen Case*, 63 id. 518 ; *For-
man* v. *Smith*, 7 Lans. 443 ; *Langton Case*, 1 Tucker, 330.)

*William N. Dykman* for respondents. This court will not
review the questions of fact or weigh the evidence. (*In re
Ross*, 87 N. Y. 514 ; *Marx* v. *McGlynn*, 88 id. 357 ; *Post* v.
*Mason*, 91 id. 549.) The probate of other papers as the will
of Mary O'Hara is conclusive in this action that the unat-
tested memoranda form no part thereof. (*Post* v. *Mason*, 91
N. Y. 539, 550 ; *Colton* v. *Ross*, 2 Paige's Ch. 396 ; *Brady* v.
*McCoskery*, 1 N. Y. 214 ; *Clarke* v. *Sawyer*, 2 id. 498 ;
*Booth* v. *Kitchen*, 7 Hun, 255 ; *De Bussiere* v. *Holloday*, 4
Abb. N. C. 111 ; *T. & B. R. Co.* v. *B., H. T. & W. R. Co.*,
86 N. Y. 127.) The Surrogate's Court had before it all the
questions raised here, and could have afforded the plaintiffs
perfect relief. (*Bellinghurst* v. *Vickers*, 1 Phill. 187 ; *Barton*
v. *Robbin*, 3 id. 455 ; *Burger* v. *Hill*, 1 Bradf. 360 ; *In re
Welsh*, 1 Redf. 238 ; *Baker's Will*, 2 id. 179 ; Redfield's

Practice [2d ed.], 229 ; *Post* v. *Mason*, 91 N. Y. 550.) The unattested letters were meant as admonitions merely, and lie without the province of the courts. (*Lomax* v. *Ripley*, 3 S. & G. 80 ; *Knight* v. *Boughton*, 11 C. & F. 513 ; Story's Eq. Jur., § 1069 ; Lewin on Trusts, § 171 ; Perry on Trusts, § 115 ; *Clarke* v. *Leupp*, 88 N. Y. 228 ; *Rainey* v. *Laing*, 58 Barb. 453 ; *Foose* v. *Whitmore*, 82 N. Y. 405.) The lack of attestation was intended to and does prevent the letters from creating a testamentary trust. (2 R. S. 63, § 40 ; *Sheldon* v. *Sheldon*, 1 Rob. Ecc. 81 ; *Jackson* v. *Van Dusen*, 5 Johns. 154 ; *Jackson* v. *Holloway*, 7 id. 394 ; *Jackson* v. *Potter*, 9 id. 312 ; *Jackson* v. *Le Grange*, 19 id. 368 ; *William* v. *Freeman*, 83 id. 569 ; *White* v. *Douglass*, 3 Seld. 569 ; Lewin on Trusts, 32 ; *Phelps* v. *Robbins*, 40 Conn. 273 ; 2 R. S. 134, §§ 6, 7 ; 137, § 7 ; Perry on Trusts, § 91 ; *Williams* v. *Freeman*, 83 N. Y. 569.) If the donee of an absolute legacy, or devise, promises to stand as trustee, the rights of the heirs at law depend entirely on the promise. If it be lawful they can do nothing, but the promise will be enforced at the suit of the beneficiary. It is only a promise to devote the gift to unlawful purposes which will avoid the gift and promise and entitle the heir at law to take, and then he takes by descent. (*Chamberlain* v. *Chamberlain*, Freeman's Ch. 24 ; *Devenish* v. *Barnes*, Prec. in Ch. 3 ; *Whitton* v. *Russell*, 1 Atk. 448 ; *Williams* v. *Fitch*, 18 N. Y. 546.) The remainder of the residuary estate, if the legatees follow the unattested letters, will be divided among the incorporated charities named, or any others which they select. (*Powers* v. *Cassidy*, 79 N. Y. 602.) There being evidence to sustain the decision, it will stand. (*In re Ross*, 87 N. Y. 514 ; *Marx* v. *McGlynn*, 88 id. 367.) When the proponents proved that the testatrix had the independent legal advice of Mr. Cullen, and that the will was read to her in the presence of four disinterested witnesses, and its effect explained, they discharged the duty imposed by their intimate relations with the testatrix. (*Crispell* v. *Dubois*, 4 Barb. 393 ; *Hindson* v. *Weatherill*, 5 De G., M. & G. 301 ; *Walker* v. *Smith*, 29 Beav. 394 ; *Nesbit* v. *Lockman*, 34 N. Y. 167 ;

*Post* v. *Mason*, 91 id. 545–548.) So much of contestant's case as rests on undue influence of the residuary legatees was waived by omitting to ask a limited probate excluding the residuary clause. (*Billinghurst* v. *Vickers*, Phill. 187; *Barton* v. *Robbins*, 3 id. 455; *Burger* v. *Hill*, 1 Bradf. 360; *In re Welsh*, 1 Redf. 238; *Baker's Will*, 2 id. 179; Redfield's Pr. [2d ed.] 229; *Post* v. *Mason*, 91 N. Y. 550.) The unattested papers could not be established as part of Mrs. O'Hara's will. (*Williams* v. *Freeman*, 83 N. Y. 569.)

FINCH, J. The testatrix gave to three persons, who were her lawyer, her doctor and her priest, absolutely, but as joint tenants, the bulk of her estate. Practically she disinherited her relatives in favor of strangers, who had no claim upon her bounty except such as originated in their professional characters, and the confidence and friendship thus engendered. For this reason probate of the will was resisted. While the testatrix was shown to have been superstitious, whimsical, blindly devoted to her church and its ecclesiastics, habitually under the influence of stimulants, and seriously dependent upon the advice of those who became her residuary legatees, it is yet certain that there was no want of testamentary capacity. But although the attack failed upon that ground, the charge of undue influence was somewhat supported by the evidence relating to her character and surroundings, which made possible and tended to render probable the existence of an outside power capable of moulding her wishes to its own. The exigency demanded of the proponents some adequate and reasonable explanation of a diversion of the estate to strangers, holding the power and influence derived from confidential relations, consistent with the free action and untrammeled exercise of the testamentary intention. The explanation came. A letter of instruction, addressed to the residuary legatees, contemporaneous with the will, and dictating the purpose as well as explaining the reason of the absolute legacy, was produced upon the hearing. These written instructions demonstrated that the residuary clause was not intended by the testatrix to pass to

the legatees any beneficial interest. The absolute devise, on its face difficult of explanation except upon a theory of undue influence, thereby lost its suspicious character and put the legatees in more of a disinterested attitude. It appeared that the testatrix did not at all desire or intend to bestow her estate upon those to whom she gave it; that her real intention was to devote it to certain charitable purposes; that these, she was advised, could not effectively be accomplished by her will, except through an absolute devise to individuals, in whose honorable action she could confide; and, therefore, and for that reason, and to effect that ulterior purpose, she gave her estate in form to the professional friends, not meaning any beneficial legacy to them or for their use. With this development of the defense the attack took on a new phase. The heirs at law and next of kin began an action in equity to set aside and annul the residuary devise and bequest, or to establish a trust, which, failing as to the intended beneficiaries, should result to those who would otherwise have taken by descent or distribution. Both cases are now before us, and it is convenient to consider them together, since our conclusion in one may tend seriously to affect the result in the other.

The proof is uncontradicted that the testatrix made the residuary devise and bequest in its absolute and unconditional form in reliance upon a promise of the legatees to apply the fund faithfully and honorably to the charitable uses dictated in the letter of instructions. It does not disprove this statement to assert that no express promise to that effect was made, or that it was the pledge of Judge McCue alone. One of the legatees, Father McGuire, is dead, and the title is in the two survivors, and it is with them only that we need to deal. The trial judge did, indeed, find as a fact that Dr. Dudley did not know until after testatrix's death that the unattested letter of instructions existed, but he certainly did know before the will was made the character of the intended disposition; that he was selected as one of the executors; that the relatives by blood were to take but a trifle, and that the bulk of the estate was to be applied to charitable purposes by the executors; and with

this knowledge he accepted the proposed trust. The trial judge further finds that Judge McCue " made no promise to obtain the bequest or devise and practiced no fraud." This finding is assailed, but unsuccessfully so far as it frees the legatees from a charge of actual fraud. In that respect we agree that there was no evil or selfish intention on their part. But the finding that Judge McCue " made no promise to obtain the bequest or devise " cannot be sustained. If any thing is rendered certain by the evidence it is that the testatrix made the absolute devise and bequest upon the suggestion of a necessity therefor by Judge McCue, and upon the understanding that he and his associates would faithfully and honorably carry out her expressed intentions. If we say that McCue made no such promise, that he came under no such honorable obligation, then we must say that the testatrix was misled into a false belief, upon which, as true, she unmistakably acted. For it is not possible to doubt that if the legatees had said — we will not promise ; we will do as we please ; we will not be even honorably bound not to take this money for ourselves — the absolute bequest would never have been made. It matters little that McCue did not make in words a formal and express promise. Every thing that he said and every thing that he did was full of that interpretation. When the testatrix was told that the legal effect of the will was such that the legatees could divert the fund to their own use, which was a statement of their power, she was told also that she would only have their honor and conscience on which to rely, and answered that she could trust them ; which was an assertion of their duty. Where in such case the legatee, even by silent acquiescence, encourages the testatrix to make a bequest to him to be by him applied for the benefit of others, it has all the force and effect of an express promise. ( *Wallgrave* v. *Tebbs*, 2 K. & J. 321 ; *Schultz's Appeal*, 80 Penn. St. 405.) If he does not mean to act in accord with the declared expectation which underlies and induces the devise, he is bound to say so, for his silent acquiescence is otherwise a fraud. (*Russell* v. *Jackson*, 10 Hare, 204.)

So far then as McCue is concerned he stands in the attitude

of having procured and induced the testatrix to make a devise or bequest to himself and his associates, by asserting its necessity and promising faithfully to carry out the charitable purposes for which it was made, and whether his associates knew or promised, or did not, makes no difference where the devise is to them as joint tenants, and all must get their rights through the result accomplished by one. (*Rowbotham* v. *Dunnett*, L. R., 8 Ch. Div. 430 ; *Hooker* v. *Axford*, 33 Mich. 453 ; *Russell* v. *Jackson*, 10 Hare, 206.) If, therefore, in her letter of instructions, the testatrix had named some certain and definite beneficiary, capable of taking the provision intended, the law would fasten upon the legatee a trust for such beneficiary and enforce it, if needed, on the ground of fraud. Equity acts in such case not because of a trust declared by the testator, but because of the fraud of the legatee. For him not to carry out the promise by which alone he procured the devise and bequest, is to perpetrate a fraud upon the devisor which equity will not endure. The authorities on this point are numerous. (*Thynn* v. *Thynn*, 1 Vern. 296 ; *Oldham* v. *Litchford*, 2 Freem. 284 ; *Reech* v. *Kennegal*, 1 Ves. Sr. 124 ; *Podmore* v. *Gunning*, 5 Sim. 485 ; *Muckleston* v. *Brown*, 6 Ves. 52 ; *Hoge* v. *Hoge*, 1 Watts, 163 ; *McKee* v. *Jones*, 6 Penn. St. 425 ; *Dowd* v. *Tucker*, 41 Conn. 197 ; *Hooker* v. *Axford*, 33 Mich. 454 ; *Williams* v. *Vreeland*, 32 N. J. Eq. 135.) The circumstances in these cases were varied and sometimes peculiar, but all of them either recognize or enforce the general doctrine. It has been twice applied in our own State. (*Brown* v. *Lynch*, 1 Paige, 147 ; *Williams* v. *Fitch*, 18 N. Y. 546.) In the last of these cases the making of a bequest to the plaintiff was prevented by an agreement of the father, who was next of kin, to hold in trust for the plaintiff; and the English cases were cited with approval and the trust enforced. All along the line of discussion it was steadily claimed that a plain and unambiguous devise in a will could not be modified or cut down by extrinsic matter lying in parol, or unattested papers, and that the statute of frauds and that of wills excluded the evidence ; and all along the line it was steadily answered that the devise was untouched,

that it was not at all modified, that the property passed under it, but the law dealt with the holder for his fraud, and out of the facts raised a trust, *ex maleficio*, instead of resting upon one as created by the testator. The character of the fraud which justifies the equitable interference is well described in *Glass* v. *Hulbert* (102 Mass. 40; 3 Am. Rep. 418). It was said to consist " in the attempt to take advantage of that which has been done in performance or upon the faith of the agreement while repudiating its obligation under cover of the statute."

Yet that is not the position of the defendants here. By their answer they deny any promise, whatever, made by them; any trust accompanying the request; any agreement to hold for the benefit of others; and insist that the property is theirs " for their own use and disposal."

Yet this is evidently intended merely as an assertion of what they insist is their legal position, and is not meant as a repudiation of their promise or its honorable obligation, and no beneficiary claiming any such violation of duty, or even as threatened or intended, is before us.

But it may happen, as it does happen here, that all of the charitable uses enjoined are for the benefit of those incapable of taking, or of a character in direct violation of the law of the State. What then becomes the duty of a court of equity? A fraud remains, except that it takes on graver proportions, and becomes more certain and inevitable. The agreement which induced the absolute devise, and the fraud of a beneficial holding secured by a contrary promise, still confront us. And what is worse, it does not need that the absolute legatees repudiate their promise, for if ever so honorably willing to perform it, they cannot do so without setting at defiance and secretly evading the law and general policy of the State. The alternative is plain, and offers no chance of escape. If the legatees repudiate their obligations, that is a fraud upon the dead woman, who acted upon the faith of their promise. If they are willing to perform they cannot perform, except by a fraud upon the law to which they and the testatrix are equally parties.

In such a case the fraud remains and exists, identical in its character as to the testatrix, but an injury to the heir at law and next of kin instead of an identified and capable bene ficiary. And it becomes not only a fraud against them, but a fraud upon the law, since it is a declared and admitted effort to accomplish by a secret trust what could not on the face of the will be done at all. If, on the ground of fraud, equity, as it has often done, and will always do, fastens a trust *ex maleficio* upon the fraudulent legatee or devisee for the protection of a named and definite beneficiary, no reason can be given why it should not do the same thing when the fraud attempted assumes a more serious character, because aimed at an evasion of the law, and seeking the shelter of unauthorized purposes. In such event, if equity withholds its power, one of two things is accomplished; either the legatee holds the estate beneficially, which is a fraud upon the testatrix and the intended objects of her bounty, or the fund is devoted to unauthorized purposes, in fraud of the law, and of the heirs and next of kin. If a trust *ex maleficio* may be fastened upon the property in the hands of the fraudulent legatee in the one case, why not also in the other? If in the one the fraud grows out of a refusal to perform, which would be the voluntary act of the legatee repudiating his promise, and so an actual fraud; in the other it grows out of the impossibility of performance, except in defiance of the public law, which is legally a fraud. In neither event can the legatee honestly hold. In both, either fraud triumphs, or equity defeats it through the operation of a trust, and protects those justly entitled. And so are the cases. In *Jones* v. *Badley* (L. R., 3 Eq. Cas. 635), the suit was by the co-heiresses and next of kin to make the defendants trustees for them, on the ground that a devise made to them of a residue absolute on its face was, in fact, for charitable purposes in violation of the Mortmain Act, and made on the faith of an agreement by the legatees that they would make such application. One of them was the confidential medical adviser of the testatrix ; the devise to the two was in joint tenancy ; no purposed or intentional dishonesty was charged against them ; in-

stead of wholly repudiating their duty, they alleged in their answer a design to carry out the charitable purposes; and yet the court did not hesitate on the ground of fraud to fasten a trust upon the property in their hands for the benefit of the heir and next of kin. *Wallgrave* v. *Tebbs* (2 K. & J. 313, 321), and *Russell* v. *Jackson* (10 Hare, 204) were cited with approval. The latter case was a bill filed by the next of kin, alleging that the absolute devise of a residue was upon a secret trust either for charitable or illegal purposes. The court so held as to the proceeds of the freehold and leasehold estates, and because the dispositions "could not by law take effect," declared the devisees trustees for the heir and next of kin. In *Muckleston* v. *Brown* (6 Ves. 63, 65) Lord ELDON intimated that where the devisees took under an agreement to hold upon such trusts as the testator should declare, but he omitted to declare any, there would be a trust to the heir which equity would decree; and added, as to a case of evasion of the statute, the pointed inquiry: "Is the court to feel for individuals, and not to feel for the whole of its own system, and compel a discovery of frauds that go to the root of its whole system?" In *Schultz's Appeal* (80 Penn. St. 405), the plaintiff failed solely for want of proof of an agreement by the legatee inducing the devise; and the same difficulty existed in *Rowbotham* v. *Dunnett* (L. R., 8 Ch. Div. 430); and as to three of the four tenants in common in *Tee* v. *Ferris* (2 K. & J. 367); but all confirm the general doctrine asserted.

It is needed now that we consider the character of the charitable uses upon which these legatees agreed to hold the residuary estate. The testatrix began her letter of instructions by saying: "I am desirous of accomplishing certain purposes, some of which at least cannot be legally carried out by express provisions of my will; and, therefore, in order more certainly to effect my purposes I have constituted you such residuary devisees and legatees." The first purpose indicated is to "set apart" the *income* of $20,000 to the ecclesiastical education of poor young men for the Roman Catholic priesthood. She directed that this provision be made "a permanent one" and

that the legatees make such arrangements that after their death the income should continue so to be appropriated. This purpose contemplated and required that the principal of the fund should be held inalienable and without an absolute power of disposition during the three lives of the legatees and for an indefinite period beyond. During this period the legal title to both the real and personal property would remain in the trustees and they pay over the income, and after the death of two the survivor was directed in some undefined manner to provide for the continuance of such income in the future. The plan violated the statute against perpetuities both as to real and personal estate, and the active trust was unlimited in its duration. (*Schettler* v. *Smith*, 41 N. Y. 334 ; *Adams* v. *Perry*, 43 id. 497 ; *Garvey* v. *McDevitt*, 72 id. 561.) What the respondent replies is that " the legatees may hand over the designated sum to an incorporated college " engaged in educating that class of young men. But the testatrix neither authorized nor contemplated any such thing. She chose her trustees for three lives, and no other was to be substituted till the death of the third, and then there might be another will, with an absolute bequest of the $20,000 to three other trustees, all honorable men, acting under a letter of instructions, and so the process go on in evasion and defiance of the law. If, indeed, the testatrix intended a gift to a college corporation, that could have been done by her will. She could have made the devise or bequest without the risk of depending on some one's honor that the fund would not be diverted to private use, so that, in so far as this devise or bequest was represented to require an absolute devise or bequest to individuals, she was either misled or deceived, or else did not intend a gift to a college corporation. The legatees, therefore, cannot perform their promise as they made it and as the testatrix understood it without violating the law of the State against perpetuities.

The letter of instruction then proceeds : "I desire $3,000 set apart, the *income* whereof shall be applied to the purchase of shoes for poor children attending the parochial schools of

St. Paul's R. C. church, Brooklyn." This provision offends in the same way with the first as to the duration of the trust with also the difficulty that the beneficiaries are indeterminate. (*Levy* v. *Levy*, 33 N. Y. 99.) Again the respondent answers, both as to this clause and the one following which requires " $3,000 set apart for the St. Vincent de Paul Society connected with St. Paul's church," that the church is incorporated, " and will receive $6,000 with *a request* from the residuary legatees to use one-half the income to purchase shoes for poor children attending the parochial school." The request would bind nobody. What the testatrix directed was not a gift to the church, but an application by her own chosen trustees of income to the two specified purposes. And if she intended the disposition now suggested, once more it is true that she could have given $6,000 to the church corporation with a *request* as to the supply of shoes quite as well as her legatees can do it, and there was no need of the absolute devise and bequest represented to exist.

Then follow these provisions, viz. : " the sum of $3,000 *for the benefit* of the Home of the Good Shepherd, and the sum of $5,000 for The Little Sisters of the Poor, both in Brooklyn." It is said that these two societies are incorporated, but they may not be entitled to the principal, if the trustees refuse it, for the latter are authorized to " limit the *use* of said *bequests* to the *income* thereof." And again the observation recurs that a bequest to these corporations could easily have been made in the will if that had been understood to be the real intention.

Finally the letter prescribes that any residue of the fund remaining should be applied " *in aid* " of the charities and purposes named in the will or in the letter, " or in any other charity which you or a majority of you may prefer." The respondent says that just such a provision as this in the body of a will has been upheld. (*Power* v. *Cassidy*, 79 N. Y. 602 ; 35 Am. Rep. 550.) That is not true. On the contrary this court has very recently declined to carry the doctrine of that case beyond its own essential limits, and is not likely to

agree that a devise may become the mere equivalent of a general power of attorney. (*Prichard* v. *Thompson*.[*])

All through this letter the duty of the legatees is denominated a "trust," the gifts provided are sometimes called "bequests," and at its close, after charging the legatees to impose upon her beneficiaries "as far as you can" the "obligation" of "the offering of the Holy Sacrifice of the Mass" in her own behalf and that of certain named relatives, she expresses her own sense of the force and character of her letter in the concluding sentence, "I desire to give to these instructions all the force and solemnity of a last will and testament."

This letter of instructions clearly and unmistakably shows ·the real nature of the transaction. The writer leaves almost nothing to the discretion of the trustees. She selects out her own objects of charity in the main, describes them in detail, fixes the amounts to be given and impresses upon her directions the "solemnity of a last will and testament." It is not at all the case of a devise to one absolutely to be expended at his discretion, but a definite and distinct trust having in view specific purposes and contemplating their precise performance.

If we construed this document to mean such dispositions as are now asserted, we should be driven to the inevitable inference that every one of them could have been easily, and safely, and perfectly made in the will itself, and that when told to the contrary by Judge McCue the testatrix was told what was utterly untrue, and what a jury might easily believe was known to be untrue, and so that the testatrix was led, by deception and fraud, to incur the danger and peril of an absolute devise and bequest — a conclusion which would destroy the will as the product of fraud. We do not believe that. Justice to two honorable men, of character and standing, forbids any such theory. Nothing about the case calls upon us for a conclusion so harsh and needless. On the contrary, we think Judge McCue told the truth to the testatrix, and that truth was that she could not tie up her estate in the hands of indi-

---

* *Ante*, p. 76.

viduals perpetually, they distributing only the income, without
violating the law of the State, and that she must either give
up the purpose or depend for its accomplishment upon an ab-
solute devise accompanied by a secret trust.

We have thus an important question squarely presented.
If equity will not touch this devise by putting a trust for the
heirs at law and next of kin upon the fund in the hands of
these legatees, the road to an evasion of our statutes, and to
the temptations of necessity or greed will be left wide open.
While in such cases it has been well said that the court should
act with caution and only upon the clearest proof of the fraud
(*Collins* v. *Hope*, 20 Ohio, 501); yet when, as here, the facts
are proved beyond reasonable question, we ought not to hesi-
tate. The testatrix did intend an absolute devise to these lega-
tees on the face of the will; but she did not intend that they
should have the resultant beneficial interest, and relied upon
their promise to carry its fruits elsewhere. They do not refuse
to perform. Although they deny the promise, it is quite pos-
sible that they mean to keep it. We are not authorized to say
or suspect that they will not, but if they do, they must inevi-
tably carry out a planned and purposed evasion of our statutes
against perpetuities.

It is said, however, and that brings us to the decisive point
in the case, that the English authorities turned upon the fact
that because of the statutes of mortmain the lands devised
upon an honorable promise by the absolute devisee to dispense
them in charity, could not by any process or in any mode be
carried to that destination without violating the law, while in
this case the charity is not prohibited, but only certain modes
of its operation. Let us test this suggestion.

The statutes of mortmain were numerous, and followed each
other in a succession as rapid as the devices and evasions of
the ecclesiastics which they were framed to overthrow, until
by the act 9 Geo. II, chap. 36, it was ordained that no lands or
tenements, or money to be laid out thereon, should be given
for or charged with any charitable uses whatsoever, unless by
deed indented, executed in the presence of two witnesses, and
made at least one year before the death of the party and regis-

tered in a prescribed manner. While under this statute a devise of land was forbidden to charitable uses, it could be so devoted by a deed *inter vivos*, and in each of the cases we have cited the absolute devisee, acting as owner, could by indenture have transferred to charity the land he had taken as devisee. But that did not serve to ward off a trust *ex maleficio* in any single instance. The result was plainly apparent that the property of the testator, by the artifice of an absolute devise coupled with a secret agreement, had been carried to a charity in defiance of the public law and in fraud of the mortmain acts. These acts did not, therefore, absolutely and totally forbid gifts of land to charitable uses. They put their prohibition not on the gift, but on the manner of it. They forbade it by will or devise. It is a similar prohibition upon the manner of gifts or transfers which our law imposes. While it is true, as was said at Special Term in the very able opinion contained in the record, that our statute does not forbid charitable devises and bequests, it does forbid expressly and imperatively a certain manner of making them. Gifts or transfers made in that manner are prohibited and made void. The principal legatee in this case knew it, and it was distinctly planned between him and the testatrix that her understood and declared purpose, which could not be lawfully carried out by a devise on the face of the will, should be effected by an absolute devise coupled with his honorable obligation to hold and appropriate the property to forbidden uses. An evasion of the law was the very occasion and object of the absolute devise. Without that it could not have been suggested without a fraud upon the testatrix, for if there was no need of it, if no statute was to be avoided or flanked, the very suggestion of an absolute devise was fraudulent.

The question here is the character of the legatees' agreement and precisely that and nothing else must serve as a test. They agreed for three lives, under the pretense of ownership, to dole out the income of this fund to indeterminate persons of their selection; at the end of three lives in some manner to continue that process, making it permanent; and to dispense a possible surplus to any charities they might choose. That precise

agreement, the one which they made, on the faith of which the testatrix acted, they must honorably and explicitly carry out or else they have defrauded her; and if they do carry it out as they agreed and as she understood it, they tie the property up for three lives and an uncertain period beyond, and so violate and defy the law.

We are not ready to concede that our statute against perpetuities is any the less sacred than the English acts of mortmain, or may be evaded with impunity. It may possibly be that the evils of such evasion are greater in the one case than in the other, but that will not justify us in shutting our eyes to the process, or holding that equity stands helpless in presence of the fraud. The learned presiding judge at the General Term, while affirming this judgment formally that it might more swiftly come to our bar, sent with it a very wise and prudent caution. He said: "It seems clear to us that the law ought not to encourage arrangements for the disposition of property by testators, such as this case discloses." In *Wallgrave* v. *Tebbs (supra)*, the vice-chancellor said that "the duty of a devisee under the circumstances stated was to throw up the property." Any devise or bequest of this character is dangerous and indefensible. It exposes testators to the suggestion of unnecessary difficulties as inducements to the artifice of an absolute devise concealing an illegal trust. It exposes the devisee to temptation and even when he acts honestly, to severe and unrelenting criticism. It subserves no good or useful purpose. If we sustain it we admit that any statute may be thus evaded, and that equity cannot redress the wrong.

We are not satisfied that the will was made through undue influence and therefore affirm the judgment of the General Term which affirmed the decree of the surrogate, with costs.

But in the equity action we reverse the judgment of the General Term and of the Special Term with costs of both parties on the appeal to this court payable out of the fund, and order a new trial.

All concur as to the first appeal; all concur as to the second, except RAPALLO, J., not voting.

Judgments accordingly.