William T. Collins, S.
The present controversy arises from a challenge by a distributee to the capacity of the legatee to take the gift under paragraph nineteenth of the will. The accounting executor asks the court to construe this paragraph.
It would be difficult to express the intent and purpose of the testator in language more clear or more emphatic than that used by him. His will says: ‘ ‘ All the rest, residue and remainder of my estate, both real and personal and wheresoever the same may be situated I give, devise and bequeath unto The New York Times Company, a domestic corporation duly organized and existing under the laws of the State of New York to have and to hold the same absolutely and forever. * * * [The] series of expressions of my desire as to what should be done by the said The New York Times Company with the said legacy is not to be construed as creating a trust or conferring any right or rights on any person or persons, nor does it subject the said legatee to any obligation to account for the disposition of the said legacy or any income therefrom. Said legacy is made to the said The New York Times Company, as an absolute, free and uncontrolled legacy.” The part of the nineteenth paragraph omitted from the quotation sets forth in some detail the charitable uses to which the testator hopes the money will be put. The court is asked to construe the “ expressions of [his] desire ” as mandatory, not precatory, with the result that The New York Times Company would take the fund in a fiduciary capacity for the benefit of the charity. The plain language of the will forbids *972 any such interpretation. Under the terms of the will, the legacy is absolute and unconditional.
The next question is whether the legatee has legal capacity to take and hold the property bequeathed to it. Every corporation has the power to “ acquire property for the corporate purposes by grant, gift, purchase, devise or bequest, and to hold and to dispose of the same, subject to such limitations as may be prescribed by law.” (General Corporation Law, § 14, subd. 3.) The objecting distributee contends that the gift was not intended by the testator for the general corporate purposes of the New York Times, but rather for the charitable purposes outlined in his will. As a consequence, she contends, the legatee has no legal authority to take, hold or use the fund.
Briefly stated, the “ desire ” of the testator as set forth in the nineteenth paragraph of his will is that the funds' are to be applied by the New York Times in aiding such women and children in distress as are included among “ The New York Times Hundred Neediest Cases.” The amount that the testator wished to have expended annually was specified. In the event that the New York Times should discontinue its Hundred Neediest Cases “ department ”, the testator wished that the money be applied by the newspaper in aiding women and children in distress in any part of New York State. The New York Times has explicitly stated to the court that it intends to carry out the testator’s wishes. Such charitable work, it is charged, is no part of the corporate activity of a newspaper incorporated under the Business Corporations Law (now Stock Corporation Law), and hence it cannot receive the funds.
By statute every corporation is given authority to contribute for the betterment of social and economic conditions. (General Corporation Law, § 34.) The corporate authority of this newspaper to devote this fund to the poor and the needy, does not depend alone, however, on the authority granted by that section. The New York Times does not pretend that the relief of the needy and distressed is accomplished through the use of its corporate funds. What it does is to use its newspaper to unite the members of the community in this worthy endeavor. It donates the services of its staff and facilities, it gives space to the publication of investigated case histories, and it appeals for funds for the poor and needy. Up to the time of the formation of the separate charitable corporation, it received the contributions, kept them in a separate fund and distributed them through the recognized social agencies stated in the case reports. It would be an unduly narrow interpretation of the charter of a newspaper and the laws under which it operates, to say that it is *973 restricted to the collection and dissemination of what is generally called “ news Service to the community must be one of the higher and primary aims of a successful newspaper. Not merely the latest happenings of the day, but all of the vital interests of the community are within the orbit of its proper interests and activities. The aim of its publication is not only to inform and entertain, but often to awaken the conscience of the community, to stir it to necessary action, or to evoke its sympathy for those members suffering sickness and poverty.
The court entertains no doubt that the activities of the named legatee as set forth in this record and as outlined by the testator in his will, are proper and legal corporate activities. The court, therefore, holds that the testator intended a gift to the named corporation and not a trust in the technical sense of the word, and that the corporate legatee has the legal capacity to receive, hold and use the property bequeathed to it.
It is also argued that the gift must be construed as charitable in purpose and that under the facts disclosed here, the court should exercise its cy pres power and order payment directly to the charity. It appears that when the will was executed in 1928 the Hundred Neediest Cases Fund was merely an unincorporated subordinate department of the New York Times. A bequest could not be paid to an unincorporated branch or department of an organization, but only to an organization which possessed the legal capacity to take and hold property. The will of this testator bears witness to careful preparation. It is argued that the testator made an absolute gift to the parent organization because he understood that a direct gift to the particular charity could not then have properly been made. In December, 1941, a separate corporation was organized under the Membership Corporations Law with the title, The New York Times Neediest Cases Fund. At the time of the testator’s death, the gift could be made directly to the intended beneficiary. The court is asked to exercise its cy pres power and to direct payment of the legacy to the charitable corporation known as The New York Times Neediest Cases Fund. The court has authority to direct the execution of a charitable gift cy pres when the gift cannot be executed in accordance with the explicit directions of the testator. When it is both possible and practicable to execute the gift in the exact way specified by the testator, the doctrine of cy pres is not applicable. (Restatement, Trusts, § 399, comment m; 4 Scott on Trusts [2d ed.], § 399.4.)
Here, the gift can be executed exactly as this testator has commanded. To say that he would have made the gift directly to the charity if he could have foreseen its incorporation as a, *974 separate entity, is mere conjecture. The testator obviously hoped that the fund would be used over a long period of years. Perhaps even if he had foreseen developments, he would have had more confidence in the permanent existence of the newspaper and the uninterrupted continuance of its policies, rather than in the separate corporation whose aims, purposes and activities might necessarily expand or contract over a period of years. Moreover he wished the money to benefit “ women and children in distress ” and not all needy persons helped by the corporation. We have no way of knowing how he would deal with the present situation. We have, however, his explicit and unequivocal directions. They are capable of execution. There is no justifiable basis for the court to direct execution of the gift in a different manner.
The court is also asked to determine whether in the light of circumstances existing at the time his will was made, the legacy under paragraph nineteenth is subject to a constructive trust. The New York Times has explicitly stated in writing that it will respect the wishes of this testator and that it will turn over the funds to the organization to which the testator made reference in his will. It appears, however, that tax consequences may depend upon whether the application of the moneys to the purposes specified by the testator results from legal duty or whether it can be characterized only as a gratuitous contribution by the New York Times.
It is a firmly established rule of law that when one obtains a bequest upon his representation that he will devote it to a particular use, a court of equity will enforce the obligation by impressing a trust upon the property in favor of the intended beneficiary. (Matter of Buehler, 186 Misc. 306, 313, affd. 272 App. Div. 757, and cases cited therein.) It has been said that where a “ legatee, even by silent acquiescence, encourages the testatrix to make a bequest to him to be by him applied for the benefit of others, it has all the force and effect of an express promise. * * * If he does not mean to act in accord with the declared expectation which underlies and induces the devise, he is bound to say so, for his silent acquiescence is otherwise a fraud.” (Matter of O’Hara, 95 N. Y. 403, 412.)
There is no testimony in this record as to any personal relations of this testator with the Hundred Neediest Cases Fund or with The New York Times Company, and there is no evidence of any explicit promise or representation by the latter to this particular testator. However, the New York Times in its brief conceives itself as holding the fund as a constructive trustee for *975 the benefit of The New York Times Neediest Cases Fund because it believes that the testator in making the bequest relied on the promise of The New York Times Company to turn over to such fund every cent it received by its solicitation. It has submitted evidence of its representation to the United States Treasury Department on February 8, 1929 that it received contributions from the general public and that these contributions “ are distributed among the organizations for the benefit of needy cases; that no charge is made for the space given in the newspaper to the description of the needy cases, nor is any charge or deduction made in connection therewith; and that all receipts are turned over to the charitable organizations for the purposes mentioned above ”. The record also shows that the New York Times did not set itself up in its publication as a dispenser of the contributions to the individuals, leaving that to the charitable corporations which had submitted the cases. ‘ ‘ It was merely the function of The Times to publicize the cases, and turn over every cent received by it as contributions, without deduction for any expense on its part.” In its brief it concedes that in its public appeal in December, 1927 (the appeal prior to the making of the will herein), the New York Times represented to the public: “ To these neediest go one hundred cents of every dollar collected, without deduction of any kind. * * * The money is used — every cent of it — to build up breadwinners stricken in body or mind so that they may be self-sustaining once more; to give friendless waifs and forsaken babies a chance in life; to keep homes from breaking up and save mothers and children from separation; to steady the despairing and fit them once more for happiness.”
Beading this will in the light of the nature of the enterprise undertaken by the newspaper, there can be no doubt that the publication of the needy cases by the newspaper and its representations respecting application of the funds occasioned the making of this testamentary gift, and that this testator placed his confidence in the newspaper’s scrupulous respect for the expression of his wishes. The court is therefore not only justified, but is required to hold that the gift was made under such circumstances that a court of equity will enforce the obligation in favor of the beneficiary if the legatee named should refuse to execute it in favor of the designated beneficiaries. The fact that the New York Times intends to respect in every way the directions of the testator means that a court of equity would not in such case be called upon to exert actual compulsion upon the legatee. The application of the fund to the described *976 needy persons results, however, from its legal obligation rather than charitable donation of its own funds.
When all issues in this proceeding have been disposed of, a decree may he submitted on notice construing the will accordingly.