Henry Epstein, J.
In February, 1914, Cynthia Cary by agreement in writing set up seven separate and distinct trusts. The first trust designated “ 1 ” was terminated and liquidated *728 prior to the current accounting period and is therefore not involved in this proceeding.
The trusts designated “2”, “4” and “ 6 ” are stated to be for the benefit of Frances Roche and her children, and are directed to be held during the lifetime of Frances Roche and thereafter during the lifetime of her son, Edmund Maurice Burke Roche, and upon the death of said Edmund the trustees shall make such disposition of the corpus thereof in accordance with the provisions of his last will and testament, and, in default thereof, to pay the same to his legal representatives.
The trusts designated “ 3 ”, “ 5 ” and “ 7 ” are stated to be for the benefit of Frances Roche and her children, and are directed to" be held during the lifetime of Frances Roche, and thereafter during the lifetime of her son, Francis- George Burke Roche, it being provided that upon the death of said Francis the trustees of -said trusts shall make disposition of the corpus thereof in accordance with the provisions of his last will and testament, and, in default thereof, to pay the same to his legal representatives.
While the proceedings for the final judicial settlement of the six trusts were pending, the remaindermen under trusts designated “ 2 ”, “ 4 ” and “ 6 ” applied to this court for a severance of the accounting under said numbered trusts from the accounting under the trusts designated “ 3 ”, “ 5 ” and “6”. The motion was granted by order dated October 7, 1959, and trusts numbered “ 2 ”, “ 4 ” and “ 6 ” were severed and have been settled. This accounting therefore deals only with trusts “ 3 ”, “5” and “7”.
Francis George Burke Roche died on October 30, 1958, and his last will and testament was duly admitted to probate by the Surrogate’s Court of New York County on February 5, 1959. The decedent exercised the power of appointment given to him in the 1914 trust agreement with respect to trusts designated “3 ”, “ 5 ” and “ 7 ”.
Article eighth of said last will and testament reads in part as follows:
‘ ‘ eighth : All the rest, residue and remainder of my property, real and personal, wheresoever situate, including the rest, residue and remainder of the property as to which I have the power to appoint the same by this my Last Will and Testament, I give, devise, bequeath and appoint in fee simple absolute as follows:
“ (a) To my friend, Walter maynard, the sum of Five hundred thousand ($500,000) Dollars.”
*729 The foregoing bequest and execution of the power appears to be in fee simple absolute1, nevertheless, such bequest was in fact made pursuant to a written letter agreement dated March 11,1957. In said letter agreement, addressed to Francis George Burke Boche, Walter Maynard stated the terms under which he was accepting the bequest and the persons for whom suitable provisions were to be made are listed with the monthly income intended for each.
The questions presented for construction are as follows-:
1. Is the sum of $500,000 bequeathed and appointed by Francis George Burke Boche to Walter Maynard subject to a constructive trust or trusts ? If so, how shall this trust or trusts be established and administered?
2. If a trust or trusts are established, are the beneficiaries named in the letter agreement to receive their monthly payments in the full amounts specified, with the individual income tax thereon paid for out of the corpus of the fund?
3. Shall the Federal and State estate taxes upon the estate of Francis George Burke Boche, deceased, be apportioned, and if so, what portion of the $500,000 shall be withheld by petitioners herein as accounting trustees as security for the payment of the estate taxes which may be imposed on the estate of Francis George Burke Boche ?
The law is clear that when one obtains a bequest of property after agreeing outside the will to devote that property to the purpose intended and declared to the testator, equity will enforce a constructive trust to effectuate that purpose and to prevent a fraud on the testator. (Matter of O’Hara, 95 N. Y. 403; Trustees of Amherst Coll. v. Ritch, 151 N. Y. 282; Matter of Campe, 1 Misc 2d 194; Latham v. Father Devine, 299 N. Y. 22; Ahrens v. Jones, 169 N. Y. 555; see, also, Restatement, Trusts, § 55, subd. [1], p. 160; 4 Scott, Trusts [2d ed.], § 491, p. 3177.) The facts in this case present a classic example of a legatee holding property upon a constructive trust.
The letter agreement of March 11,1957, gave Walter Maynard “ absolute discretion to use the funds” either “ to purchase annuities to be paid to your beneficiaries above mentioned or any of them” or “ create a trust or trusts in respect of any of said funds for the purpose of executing your wishes as above set forth”.
The power granted to the decedent is susceptible of the construction whereby Maynard may purchase an annuity for the named beneficiaries or establish a trust. In the event individual annuities were purchased, it would not violate the *730 rule against perpetuities because an annuitant’s life is not a measuring life within the prohibition of the statute (People’s Trust Co. v. Flynn, 188 N. Y. 385; Matter of Trumble, 199 N. Y. 454; Matter of Katz, 45 N. Y. S. 2d 132). It is likewise true that the creation of a trust fund to be measured by the lives of the seven named beneficiaries would not be a violation of the rule against perpetuities. The law of this State has been amended (Personal Property Law, § 11; Real Property Law, § 42; L. 1958, chs. 152, 153, both eff. Sept. 1, 1958) to permit the suspension of ownership for any number of lives in being plus a minority, provided that the lives be not so numerous as to make proof of their end unreasonably difficult. A further amendment (L. 1959, ch. 456, §§ 1, 3, 4) sets the period during which the right of alienation may be suspended by an instrument in execution of a power on the basis of the number of lives permissible at the time of the execution of the power, rather than at the time of the creation of the power.
The execution of the power granted under the trust is therefore valid and it remains only to determine the method of administering the constructive trust.
After the deduction of the estate taxes, the capital of the trust will amount to approximately $250,000. The letter agreement specifically provides for payment of estate taxes in the proportion that the bequest to Maynard bears to the total estate. The petitioners are directed to withhold $250,000 as security for the payment of the estate taxes which may be imposed on the estate of Francis George Burke Roche. The purchase of an annuity would not be possible with the amounts on hand. Further, the average age of the beneficiaries is about 65 years, and the death of the beneficiaries at an age earlier than that figured in the American Experience Table of Mortality or the “ Actuaries’ or Combined Experience Table of Mortality ’ ’ would result in the termination of the puchased annuity and the foreclosure of the remaindermen’s interest. The most equitable solution and the one in which all the parties will receive the greatest benefit lies in the trust structure. It is therefore directed that a single trust be established out of which payments are to be made to the beneficiaries as specified in the letter agreement.
The final question to be determined herein, is whether, under the terms of the trust, the beneficiaries are to receive their bequest free of any income tax thereon. Although income taxes are usually the personal liability of the beneficiary, a testator may relieve the beneficiary from the payment of Federal income taxes. The language used to express a testator’s desire to *731 relieve a beneficiary of the tax burden must be clear and unambiguous. The letter agreement contains the following language: ‘ ‘ On condition that you perform the above, I do hereby agree that if I survive you and become entitled to receive said sum, I shall accept the same; and from and after my receipt thereof, after paying therefrom all estate, inheritance and other taxes, and all costs and expense which may be incurred from time to time in the administration of said fund including, without intending to limit the generality of the foregoing, income taxes, gift taxes and any other taxes, I shall use the principal and income, if any, of said fund to pay or cause to be paid therefrom each and every of the monthly sums above mentioned.”
The reference to the payment of income taxes in the above text was obviously intended to further describe an administration expense. The taxes payable on income paid to a beneficiary cannot reasonably be called a cost or expense in administration of the fund. The trustee is directed to pay the bequests as directed without also paying the income tax due thereon. The motion to settle the trustees ’ account is granted.