New York County.—Hon. D. G. ROLLINS, Surrogate.—January, 1886.

Lynch *v.* Loretta.

*In the matter of the probate of the will of* Margaret Lynch, *deceased.*

A member of a religious order who, as such, has taken the vow of poverty, is legally competent to receive a bequest, and hold and dispose of the same for his individual benefit.

Decedent, who left her surviving a mother, brothers and sisters, during

her last illness, which occurred at a charitable institution in charge of a religious community incorporated under L. 1848, ch. 319, gave, by a bequest, absolute upon its face, to a member of that community, the bulk of her property. It was contended that the gift must be deemed to have been made in trust for the society, and was void under the statute cited, so far as it exceeded one half of the entire value of the estate; though the evidence failed to disclose the avowal of a purpose, or even a desire, on the part of testatrix, that the provision should enure to the benefit of the society.—

*Held*, that the bequest was valid, and the legatee took absolutely.

Matter of O'Hara, 95 *N. Y.*, 403—distinguished.

CONSTRUCTION of will upon its admission to probate. The facts appear in the opinion.

B. C. WETMORE, *and* F. W. HINRICHS, *for contestants.*

THORNTON, EARLE & KIENDL, *for executor, proponent.*

THE SURROGATE.—The paper, whose claim to probate is here to be determined, purports to be the last will and testament of Margaret Lynch. If it be valid, then, by virtue of its provisions, Father Mahere, of St. Vincent Ferrer church, will receive a legacy of $100, a legacy of $8,000 will be paid to Mother Mary Loretta, of the House of the Good Shepherd, in the city of Brooklyn, and the remainder of the estate, amounting to $2,000 or $3,000, will pass in equal shares to James Lynch and John Lynch, decedent's brothers. These brothers are among her next of kin, and are entitled, as such, to share in her estate, in case she shall be discovered to have died intestate; so also is another brother, and so are her mother and her two sisters. The brothers and sisters are united in opposing probate.

The paper which has given rise to this controversy was signed and published by the decedent, and duly

attested by subscribing witnesses, in premises occupied by a corporation styled "The House of the Good Shepherd, in Brooklyn, N. Y." To that institution the decedent was admitted in August, 1883, about a week previous to the day when this instrument was executed.

She was received partly at her own request, and partly at the solicitation of some of her nearest relatives. She did not become a member of the religious community in charge of the house, nor was she, during her stay, subject in any wise to the rules and regulations of such community; nor did she take upon herself any of the vows to whose observance its members had bound themselves. She was simply allowed to dwell in the premises as a lodger, and was free to depart therefrom at her own will and pleasure. She had been estranged from her family, and was suffering from illness, and, doubtless, sought the shelter of the convent for comfort, quiet and repose. Twice before she had been an inmate of this House of the Good Shepherd. On the latter of these two occasions, she had remained for a period of five months, which had expired about one year before her final return, in August, 1883.

The opposition to the probate of the paper claimed to be her will, is based upon two grounds, viz.: lack of mental capacity to make and execute it, and submission to undue influence in the selection of its beneficiaries. At the time of its execution Margaret was about thirty-three years old. She had, from her youth, exhibited a wilful and wayward disposition, and, at the age of twenty-seven, had manifested indications

of insanity. Upon a certificate of Commissioners in Lunacy, she had been for a time detained in an asylum for the harmless insane on Blackwell's Island.

In spite of this fact, however, and of evidence respecting certain eccentricities of conduct in the later years of her life, I am satisfied that, at the time of the execution of this instrument, she was possessed of sufficient capacity to make a will.

I find, also, that her testamentary dispositions were not obtained by fraud, coercion, restraint or any sort of illegal influence. In view of her character, her illness and her surroundings at the time this disputed paper came into being, and in view of the liberality of its provisions for Mother Loretta, the court has felt bound to scrutinize jealously all the evidence relating to its preparation and execution. But whatever grounds of suspicion may exist in the circumstances to which I have referred are fully repelled by abundant proof that the paper expresses the intelligent, voluntary and deliberate purpose of the testatrix; for

*First.* There is no evidence that the idea of making a will was first suggested to this decedent by any person connected with or interested in the institution under whose roof she was sheltered;

*Second.* There is no evidence that the decedent's selection of Mother Loretta as a principal legatee was due to the persuasions or suggestions of any person in the House of the Good Shepherd or out of it;

*Third.* The attorney who drafted the disputed paper and superintended its execution was not employed for those purposes at the instance of any

inmate of that institution, but when he visited the premises to confer with the decedent, he did so at the request of her brother James;

*Fourth.* This attorney received his instructions directly from the decedent herself, and those instructions were clear and explicit. When they had been embodied in the paper before me, that paper was read to and by the decedent, and was formally declared by her to be her will.

*Fifth.* The relations between the decedent and her family sufficiently explain why a person of such temper and disposition as she evidently possessed, might, without prompting, have seen fit to exclude them from sharing or from largely sharing in her posthumous estate.

The paper propounded may go to probate.

The contestants have put in issue, under § 2624 of the Code of Civil Procedure, the validity of the bequest to Mother Mary Loretta. They ask that the Surrogate, if the will is pronounced valid, shall declare whether or not that particular legacy is legal and effectual. They insist that it was given by the decedent, and must be received by the legatee, if received at all, in trust for the House of the Good Shepherd. That institution is a benevolent corporation, organized under chapter 319 of the Laws of 1848; and as the bequest in question disposes of more than one half of the property left by the decedent, the contestants claim that as to such excess the disposition is made invalid by chapter 360 of the Laws of 1860.

It seems to be suggested by counsel who opposes

probate—though it is not strenuously insisted upon
by him—that the legatee, Mother Mary Loretta, is
incompetent to take property by will because of the
fact that she is a member of a religious order or com-
munity, and as such has taken the vow of poverty.
The doctrine by which a monk or nun was at one
time regarded as civilly dead, and as incapable of
acquiring any goods or estate after his or her profes-
sion, has not obtained in England since the reforma-
tion, and seems never to have been part of the law of
this country.    Such a person is as free as any other
to hold property and to dispose of it.    Any sugges-
tion to the contrary was characterized by ROMILLY,
M. R., in Metcalfe's Will (*L. J., N. S., 33 Eq.,* 308),
" as sheer and absurd nonsense."

The point seriously pressed by the contestants is
that, under all the circumstances here appearing, the
bequest must be deemed to have been given in trust
for the benefit of the institution with which the
nominal legatee is connected.

The fact that Mother Loretta is a member of the
community in control of the House of the Good
Shepherd, manifestly does not of itself furnish suffi-
cient ground for holding that a bequest given to her
individually was given for the benefit of that com-
munity, or for any other purpose than her individual
use and enjoyment.    And careful examination of all
the evidence has failed to satisfy me that the legacy
was given by the decedent, or was received by the
beneficiary upon any trust, express or implied, for
the benefit of the institution with which the latter is
associated.

No such trust has been created, unless the testatrix intended the legacy to be for the benefit of such institution, unless in some way she communicated such intention to the nominal legatees, and unless also such legatee, by express words or deeds, or by silent acquiescence consented to carry out the testatrix's wishes (Adlington v. Cann, 3 *Atk.*, 152 [1744] ; Lomax v. Ripley, 3 *Sm. & G.*, 48 [1854]; Wallgrave v. Tebbs, 2 *Kay & J.*, 313 [1855] ; Tee v. Ferris, *id.*, 357 [1855] ; Moss v. Cooper, 1 *Johns. & Hem.*, 352 [1861] ; Jones v. Badley, *L. R.*, 3 *Eq.*, 635 [1867] ; McCormick v. Grogan, *L. R.*, 4 *H. L.*, 82 [1869] ; Schultz's Appeal, 80 *Penn. St.*, 396 [1876] ; Rowbotham v. Dunnett, *L. R.*, 8 *Ch. Div.*, 430 [1878] ).

. The recent decision of the Court of Appeals in Matter of O'Hara (95 *N. Y.*, 403), is not in conflict with the proposition above stated. In that case, a testatrix had undertaken by her will to give her residuary estate to three persons as joint tenants. At the time the will was executed, she wrote a letter of instructions to these legatees, explaining why she had made the bequest, and to what purposes she wished it to be applied.

In pronouncing the opinion of the court, holding that the will created an invalid trust, FINCH, J., said : " The proof is uncontradicted that the testatrix made the residuary devise and bequest in its absolute and unconditional form *in reliance upon a promise of the legatees* to apply the fund faithfully and honorably to the charitable uses dictated in the letter of instructions."

It further appears, from Judge FINCH's opinion,

that one of the legatees advised the testatrix that she could not effectually accomplish her charitable purposes except by a provision absolute in form, and whose legal effect would be to enable the nominal beneficiaries to divert the bequest to their own use; that he further advised her that she would have nothing to rely upon except the honor and the conscience of the legatees; that she thereupon answered that she was satisfied that the legatees could be trusted, and that she then wrote the letter of instructions above referred to.

It is neither declared nor intimated, in Matter of O'Hara, that, where a bequest is made to a person absolutely, and where no obligation, express or implied, is imposed, or attempted to be imposed, by the testator upon the legatee to apply it for any particular person or purpose, and where the legatee has neither expressly nor tacitly agreed so to apply it, the bequest must nevertheless fail to take effect as an absolute gift to such legatee, merely because it was bequeathed with the hope and expectation on the testator's part that the legatee would not use it for his own purposes, and would use it for the purposes which the testator had at heart. Such hope and expectation will never suffice of themselves to fasten upon a bequest any trust that the courts will recognize, whatever moral obligation they may seem to impose upon the legatee.

In the case at bar the legatee, whose bequest is disputed, doubtless regards herself as under a moral obligation to the community whereof she is a member to devote all property acquired by her to the uses

of that community. But the law cannot hold her to that obligation, and the probable belief of the testatrix, that the legatee might deem herself bound by it, has not engrafted a trust upon the legacy. See, in addition to the cases already cited, Willets v. Willets (35 *Hun,* 401); Bowker v. Wells (2 *How., Pr., N. S.,* 150).

The evidence does not show that Mother Loretta or any other person at her instance, or with her knowledge, induced or sought to induce the testatrix to make the bequest here in question. It does not show that the testatrix avowed any purpose that that bequest should inure to the benefit of the society of which Mother Loretta was a member. It does not show, indeed, that such was the desire of the testatrix, or that she knew that the legatee had taken a vow of poverty which would not only prohibit her from personal enjoyment of any bequest in her favor but would forbid her to apply such a bequest to any other uses than those prescribed by the religious order to which she belonged.

And besides, the obligation of the vow of poverty might be removed by superior authority, or the legatee might herself renounce it at any time that she saw fit. Such renunciation might necessitate her withdrawal from further association with the society, but the society could not in that event claim the bequest or call upon its recalcitrant member to account for it. Any hope or expectation that the testatrix may possibly have entertained from the supposed character of the legatee, or from her connection with the convent, that she would devote to its

uses the fund bequeathed, was never, so far as the testimony discloses, made known to the legatee, nor did she, directly or indirectly, declare to the testatrix any purpose to recognize or regard any such hope or expectation.

In Rowbotham v. Dunnett (*supra*), cited by the Court of Appeals in the matter of O'Hara (*supra*), a testatrix, who had declared her intention of devising real estate to certain charities was advised by her solicitor that such a gift would be invalid. She thereupon devised the same to such solicitor and another for their personal use and benefit, without any restriction, trust or condition. Although the court avowed itself satisfied that the testatrix hoped and believed that her original purpose would be effected by the devisees, it nevertheless held that this circumstance, even though known to such devisees, did not engraft a trust upon the devise.

Upon the foregoing authorities, I hold that, in the case at bar, Mother Loretta is absolutely entitled to the bequest in her favor, and that no trust is created which the House of the Good Shepherd, if itself competent to take a bequest under this will, could enforce for its benefit, or which, because of the incompetency of such society, the contestants can now avail themselves of for their own advantage.

Let a decree be entered accordingly.