(10 App. Div. 104.)

EDSON v. BARTOW et al.

(Supreme Court, Appellate Division, First Department. November 13, 1896.)

1. RES JUDICATA—IDENTITY OF QUESTION.
    A decision, in construing a will, that persons named as executors took individually the residuary estate, is not an adjudication of the question whether, by reason of any extrinsic circumstances, the estate came to them charged with a trust.
2. BEQUEST IN TRUST—SILENCE OF LEGATEE.
    Silent acquiescence has the effect of an express promise, where a person permits a testator to make a bequest to him on the belief that he will apply it for the benefit of others.
3. WILLS—CONSTRUCTION OF—VOID TRUST.
    Testatrix, after making bequests in favor of various religious and charitable bodies, provided that, if any legacies should fail, the amount thereof

should go "absolutely to the persons named as my executors"; that, "in the use of the same, I am satisfied they will follow what they believe to be my wishes"; and that "I impose on them, however, no conditions; leaving the same to them personally and absolutely, without limitation or restriction." There was no evidence of any promise by executors B. or F. to apply the amount of such legacies according to the testatrix's wish. Executor P., who, as testatrix's counsel, drew her will, consented by silence to carry her wishes into effect. In an action to construe the will, it was decided that the bequests to the religious and charitable bodies were void, and that the executors took individually the amount of such legacies. *Held*, that since each took, as tenants in common (1 Rev. St. p. 727, § 44), an absolute one-third interest in the residuary estate, and P. took his interest charged with a void trust, such interest passed to testatrix's next of kin. Ingraham, J., dissenting.

Appeal from special term, New York county.

Action by Margaret B. Edson, individually and as executrix, against John A. Bartow and others, as executors, to impose a trust on a bequest to the executors, and to declare said bequest invalid. From a judgment for defendants (37 N. Y. Supp. 99), plaintiff appeals. Modified.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, PATTERSON, and INGRAHAM, JJ.

Joseph H. Choate, for appellant.

David B. Ogden, for respondent executors.

Cephas Brainerd, for respondent Young Women's Christian Ass'n.

S. P. Nash, for respondent Orphans' Home & Asylum and others.

Huntington & Rhinelander, for respondent Huntington.

Peter B. Olney, for respondent Charity Organization Society.

William W. Hoppin, for respondents Woman's Hospital and others.

John B. Pine, for respondent House of Mercy.

J. F. Kernochan, for respondent New York Free Circulating Library.

RUMSEY, J. In May, 1890, Mary A. Edson made her will, which was followed in the same month by two codicils. In this will and codicil, after making a large number of bequests to various charitable institutions, the precise nature of which will be considered later, Miss Edson made the following bequest:

"If, for any reason, any legacy or legacies left by my will or by any codicil, either pecuniary or residuary, shall lapse or fail, or for any cause not take effect, in whole or in part, I give and bequeath the amount which shall lapse, fail, or not take effect, absolutely, to the persons named as my executors. In the use of the same, I am satisfied that they will follow what they believe to be my wishes. I impose upon them, however, no conditions; leaving the same to them personally and absolutely, and without limitation or restriction."

The last codicil was executed on the 27th day of May, and on the 29th of May, two days afterwards, Miss Edson died. The will contained a direction to the executors to sell and convey any real estate of which the testator died seised, and to apply the proceeds of such real estate to the purposes of her will. In an action subsequently brought by the executors for a construction of the will, it was held that a large number of bequests to charitable and benevolent institutions were void, and that the general devise of the rest, residue,

and remainder of the estate to the executors, to be divided among such incorporated religious, benevolent, and charitable societies of the city of New York, and in such amounts, as should be fixed or approved by them, with the approval of the Reverend Dr. William R. Huntington, which bequest was contained in the last clause of the will, was also void. It was further held in the same action that the bequest to the persons named as executors, quoted above, was valid, and vested in those persons, absolutely, the residuum of the estate, not otherwise disposed of, and that they took such share personally, and not as executors. After that action had been decided, this suit was brought. The plaintiff in this action is the widow and executrix of Marmont B. Edson, who was the brother of Miss Edson, and her only next of kin and heir at law. The plaintiff alleges that the persons named as executors, who took the residuum of the estate of Mary A. Edson, under the bequest to them, received that estate upon a secret trust to dispose of it according to her wishes, and that those wishes, by virtue of which the trust was created, were that the estate should be distributed by the legatees to the various corporations, the particular legacies to which in the former part of the will were declared void, or that it should be distributed, in accordance with the immediately preceding portion of the will, to such incorporated religious, benevolent, and charitable societies in the city of New York as should seem good to the persons taking the estate. It is claimed by the plaintiff that, these trusts being void, the bequest to the defendants fails, and that, therefore, she, as the executrix of the next of kin of the testator, is entitled to have the residuary estate. Upon the trial at the special term, it was held that the plaintiff had failed to make out her case, and her complaint was dismissed. From the judgment dismissing the complaint, this appeal is taken.

The respondents claim that the questions presented in this action were decided adversely to the plaintiff here in the action brought by them for the construction of the will, and that the judgment there is an adjudication in their favor, which must dispose of this case. It appears from an examination of the judgment in that case, as it is presented here, that the parties to this action were also parties to that one; and, of course, so far as any questions were raised by the pleadings in that case, the decision of them is conclusive upon the parties in this action. Cromwell v. Sac Co., 94 U. S. 351. It was decided in the former suit, upon an interpretation of the will, that the persons named as executors took the title to the residuum of the property absolutely, to do with it as they pleased, and that must be taken as the settled law of the case between these parties. But the question presented here is not whether the residuary legatees took the estate by virtue of the will of Miss Edson, but whether, by reason of any extrinsic circumstances, that estate came to them charged with a trust. That question was not presented in the action for the construction of the will. The only question presented there was whether certain clauses of the will were valid, and what was the construction and effect of those clauses which were decided to be good. There was no claim in the former action that the will was at all ambiguous, and for that reason there was no ground for the introduc-

tion of extrinsic evidence, but the case was to be decided solely upon the inspection of the paper which was presented as the will of Miss Edson. The question depended simply upon the terms of the will itself, and had nothing to do with the alleged extrinsic fraud. Here the construction and effect of the will are admitted, but it is claimed by the plaintiff that, by reason of the facts occurring at the time the will was executed, the apparently absolute estate which the respondents take is charged with a void trust, and for that reason the estate, which otherwise would be apparently good, is invalid. The question raised there could not be decided in the action for the construction of the will. The distinction between the questions raised in the two classes of cases is considered and explained in Re Keleman, 126 N. Y. 73, 26 N. E. 968, and it is apparent from what is said in that case that the decision in the action to construe the will is not an adjudication upon the main question presented in this case.

It is a well-established principle of law that where a person, knowing that a legacy to him is intended by the testator to be applied to purposes other than for his own benefit, either expressly promises, or by silence implies, that he will carry the testator's intention into effect, and the property is left to him upon the faith of that promise or undertaking, it is, in effect, the case of a trust. The rule has been laid down in numerous cases, and must be deemed to be settled in this state by the case of O'Hara v. Dudley, 95 N. Y. 403. The plaintiff claims that the circumstances under which this will was executed are such as to bring the residuary legatees within this rule of law, and to charge them as trustees of the property which they took by the residuary clause of the will. The rule of law is not disputed, but it was held by the learned judge at special term, and is claimed here by the respondents, that the evidence is not sufficient to bring the residuary legatees within the condemnation of that rule, and it was for that reason that the complaint was dismissed. It is evident, from the statement of the rule mentioned above, that a secret trust in such cases may be established by some other means than an expressed promise. If the rule were only to be applied where it could be shown that the legatee expressly promised, in terms, to carry out the provision of the secret trust, it would be seldom that it could be proven, and a wholesome rule would lose much of its beneficial effect. But the rule is not so limited. It is not necessary, in order to establish a trust of this kind, to show that the alleged trustees made an express promise to carry the wishes of the testator into effect. A much broader rule has been established. Where a person, even by silent acquiescence, permits the testator to make a devise or bequest upon a belief that he will apply it for the benefit of others, that has the force and effect of an express promise. O'Hara v. Dudley, 95 N. Y. 403. In Russell v. Jackson, 10 Hare, 204, it appeared that the testator made a devise to the two Jacksons by a secret trust, which was stated in full only to his solicitor, but that subsequently the testator and the solicitor and the two Jacksons were present at an interview in which the testator stated to them that, having confidence in them, he would leave his property

to them, being satisfied that they would carry out his intentions, which they knew, and that one of them assented to what was said, and that the other did not dissent.    Upon that condition of affairs, the vice chancellor held that the silent acquiescence was just as effectual to charge the legatee as a trustee as though there had been an express promise.    In Tee v. Ferris, 2 Kay & J. 357, the testator had devised his property to four persons absolutely; but at the time of his will had written a letter in which he said that he had devised the estate to them because he was not able to decide upon the disposition of it, and that he adopted that course in entire confidence that, if he should die without making any further disposition, they would appropriate it to charity use, in their sound discretion.    After the will had been executed, Ferris, one of the legatees, being with the testator, the will and letter were produced by the solicitor who drew it, and they were read aloud in the presence of Ferris.    The letter was not communicated to Ferris at the request of the testator, but Ferris heard it as it was read, the testator being present, and kept silent and said nothing about it.    The court held that his silence when the letter was read was equivalent to an undertaking on his part to carry into effect the testator's intention as therein expressed, and the legatee Ferris was charged as trustee.    This case has frequently been cited, both in England and in this country, and never without approval, so that the rule laid down in it may now be deemed to be a fair illustration of the extent to which courts of equity will go in establishing a secret trust for the purpose of avoiding a fraud upon the testator.    With this rule in mind, let us examine the testimony in this case, as to which there is no dispute:

It appears that Miss Edson was desirous of devoting a large part of her estate to charitable objects.    Her brother, Marmont Edson, who was her only next of kin, was a man of considerable wealth, and had no need to receive any benefit from his sister.    The will which she finally executed was drafted by Mr. Parsons, one of the residuary legatees, who had been her counsel and adviser.    When that draft was presented to Miss Edson, she made various changes in it,—not particularly important, but yet sufficient to show that she understood the provisions of the will.    Among these provisions were various bequests of considerable sums to different charitable institutions, and there was a special gift of the rest, residue, and remainder of her estate to her executors, to be divided among such incorporated religious, benevolent, and charitable societies as they should appoint, with the approval of Dr. Huntington.    The will then contained the clause quoted at the beginning of this opinion. The second codicil, which was executed a few days afterwards, repeated the two provisions which have just before been stated, with another provision which is of much force in this connection.    That was, substantially, that if any of the societies or institutions named in the will or codicil should be unable to take the legacy intended for it, by reason of want of incorporation, or any other cause whatever, she gave that legacy absolutely to the person who was president of such society, if it had a president, and, if not, to the

person who should be treasurer, if it had a treasurer, and, if not, to the person who should be its chief executive officer, to be by him applied to the use and purpose of such institution or society. It is evident from this that Miss Edson was determined that, if there were any possible way to have it brought about, none of the bequests in her will should fail by reason of any legal objections. This intention is emphasized by the residuary clause, which only took effect in case any legacy left by the will or codicil should lapse or fail.    It is quite evident from an examination of the will that there were no large legacies which could lapse or fail for any other reason than their invalidity, because the only other legacies were small, compared with the great bulk of the property, and the whole residue of the estate was bequeathed to the executors, to be distributed to indefinite charitable societies, in the paragraph of the will immediately before the absolute gift to the persons named as executors.    It is quite clear from an inspection of the will that there could be no failure of any bequest which would not go into the rest and residue, to be distributed pursuant to the next to the last paragraph of the eighth clause of the will, and the first paragraph of the fifth clause of the last codicil, if those bequests should turn out to be valid.    So it was evident that the only contingency upon which the bequest in the last paragraph would take effect was the illegality of the residuary clause just before mentioned. This, of course, must have been known to the person who drew the will, because it is apparent from an inspection of the paper itself, and it necessarily follows from even a cursory reading.    It appears that, when these papers were executed, Mr. Parsons was present; that he read over the will and the codicil to Miss Edson at the several times when they were executed, and that from time to time he paused and looked at Miss Edson; and that she nodded in such a way as to indicate that she understood perfectly what was said.    That having been done, the will was executed in proper form.    There is no evidence—indeed, there could be no evidence— of the wishes which Miss Edson had expressed to the persons named as her executors with regard to the disposition of this absolute devise to them.    There is nothing in the case to show that at any time she had any communication with either Bartow or Fairchild with regard to these bequests.    There is nothing to show any further communication to Mr. Parsons than such as must have taken place when he received her instructions for drafting the will, and we can therefore look for her wishes only in the paper which is presented as her will.    It is quite evident from this paper what her wishes were.    They were that this property should go in charity, and in such charity as might be appointed by her executors, with the approval of Dr. Huntington.    The person who drew the will must necessarily have been acquainted with those wishes. When he read over the last bequest, by which he, with the other persons named as executors, took that property absolutely, he must have been charged with the knowledge that the wishes of Miss Edson about the disposition of her property had been imme-

diately before that expressed to him in that will, and he must have known that the wishes which she expressed the belief that he would carry into effect were those wishes which had just been expressed by her on that solemn occasion. No other conclusion can be drawn from the circumstances surrounding the transaction. Either Mr. Parsons knew what her wishes were, as she said he did in the will and codicil, in which case he was bound in good faith to carry them into effect, because he did not dissent, or he had no knowledge at the time when he read that clause to the testator, although she said that he had. We must believe that he knew what the wishes were, and, believing it, it is impossible to resist the conclusion that he drew the inference which any other man must necessarily draw,—that the testator's wishes with regard to the disposition of her property were those which she had immediately expressed in her will, and which she feared, perhaps, might for some reason not take effect. Under all the circumstances, as they are disclosed, it is a necessary inference, we think, that Mr. Parsons, when he drew this will and attended to the execution of it, knew what the testator's wishes were; that he knew they were those which had just been expressed; and that he gave her to understand, by his acquiescence, that he would carry those wishes into effect, in case, for any reason, they failed to be carried into effect under the other clauses of the will. The inference thus drawn is strengthened by the act of the legatees which took place shortly after the probate of the will. None of them, as is conceded, except Mr. Parsons, ever had any communication with the testatrix about this will, nor did they know anything about it,—even the fact that the will had been executed, or that a bequest had been made to them. Yet we find that in a short time after the probate of the will, with the approval of Dr. Huntington, they proceeded to appoint the residuary estate which had been given to them to certain charitable objects. This appointment could hardly have been made in the way in which it was made, with the approval of the gentlemen selected by the testatrix for that purpose, unless the legatees had been advised of the wishes of the testatrix. Whence could they have received any such information, unless it was from that one of their number who had drawn this will, and was aware of Miss Edson's wishes? The evidence, so far as Mr. Parsons is concerned, is not great in amount, to be sure. But reading between the lines, and drawing such inferences as we are compelled to draw from the surrounding circumstances and from subsequent acts, we must conclude, from all the facts, that when this will was executed he did have an understanding with Miss Edson as to her wishes with regard to this property, and that, in making a disposition of her estate, she relied upon his tacit consent to be governed by her wishes previously expressed. This brings the case, so far as he is concerned, clearly within the cases above cited.

But Messrs. Fairchild and Bartow stand upon an entirely different footing. It has been decided in Fairchild v. Edson, 77 Hun, 298, 28

N. Y. Supp. 401, that the three gentlemen named as executors took this residuary estate absolutely, under this clause of the will. Each one of them became the owner of the one-third of the estate which was given to him, with an absolute right, not only to have it, but to have it separated from the rest at once upon the final disposition of the estate, because he took his share in severalty, and absolutely, under the terms of the will. By the express provisions of the statute, he took this as a tenant in common, and not as a joint tenant. 1 Rev. St. p. 727, § 44; In re Kimberly's Estate, 150 N. Y. 90, 44 N. E. 945. It has been said that the necessary intent of the testatrix in making this devise "to the persons named as my executors" was that they should take it as joint tenants, because otherwise they would not be bound to carry out her wishes. But this involves the consideration of extrinsic proof for the purpose of giving a construction to the grant. The nature of the estate which is granted by a will or deed is to be determined by the words of the grant, and no parol evidence is admissible to alter the construction which must necessarily be given to the words themselves. There is a vast difference between admitting parol evidence for the purpose of establishing a trust, and admitting it for the purpose of changing the legal construction of a grant. In the one case, evidence must necessarily be received. In the other case, the party claiming under a will gets his estate by virtue of what is put into the will, and the extent and nature of that estate must be determined by the words which are written in the paper, and it cannot be enlarged or diminished by extrinsic considerations as to the intent of the testator which have not been put into the grant itself. This rule of law is so well settled that authorities need not be cited to sustain it. As these gentlemen took this property as tenants in common, with regard to them the bequest was precisely the same as if the residuary estate had been divided into three portions, and one portion given to each of them. If they had taken the estate as joint tenants, it is established by O'Hara v. Dudley, supra, that each one would have been bound by the tacit agreement of Parsons to devote it to the wishes of the testatrix, no matter whether they had any notice of this agreement or not. The reason is that the joint tenants have but one estate, and not three separate estates in severalty, and they all take this one estate subject to the infirmity which necessarily results from the agreement between the testatrix and one of their number which resulted in the gift being made. But with tenants in common, upon both principle and authority, the rule is different. As to them, the share of each one belongs to him, without any reference to the ownership of the other shares; and, when the property is so given, it must be deemed that he takes his share free from any charge that another legatee had impressed upon his own share; and, unless he himself had been a party to the promise by which the trust was created, he would take the absolute ownership of his share by a valid title. The trust in this case is impressed upon the property, not by reason of the intent of the testatrix, but because the legatee, having knowledge of that intent, accepts the trust, either upon an express promise to carry it out, or upon such

acquiescence as estops him from denying that the promise was made. Unless there is such promise or estoppel, the cases are conclusive that no trust exists. The promise must be made with reference to the estate which is bequeathed, and it can only be made, in the nature of things, by the person to whom the bequest is made, if he has a separate estate from any other bequeathed in the will. It necessarily follows that, if the person sought to be charged as trustee knew nothing about the bequest to him, he cannot be charged with an assent, and therefore he cannot be charged with a trust. To hold otherwise would be to put it in the power of any person taking a share of property under a will to deprive every other person mentioned as a legatee under the will of the power to take any part of the estate. One tenant in common has no more connection with another tenant in common than has one legatee with another legatee. The estate given to each is separate from the estate given to any other; and there is no reason, in principle, if one tenant in common can be charged with an agreement made by another tenant in common, to which he is not a party, and of which he has no knowledge, why any legatee of a portion of the estate may not also be charged with a like agreement made between the testatrix and the draftsman of the will, although he knew nothing whatever about it. For this reason, upon principle, it seems to us that it cannot be said that one tenant in common is chargeable with the tacit agreement by which another tenant has impressed upon his own share a trust. The same rule is to be deduced from the cases. It was expressly decided in Tee v. Ferris, 2 Kay & J. 357, where that question was the only question presented when the case finally came before the vice chancellor. The case was followed in Rowbotham v. Dunnett, 8 Ch. Div. 430. The same rule is laid down in the case of O'Hara v. Dudley, supra. In that case it appears that the testatrix gave her estate to three persons absolutely, but as joint tenants. Such is stated to be the bequest, by Judge Finch, at the beginning of his opinion. It appears in that case that but one of the legatees had any knowledge of the intention of the testatrix, or had made any agreement to be bound by it; and it was claimed that, because no such agreement had been made by the others, they were not bound, and that as to them the devise was good. In repudiating that claim, Finch, J., bases his decision expressly upon the ground that three legatees took this estate as joint tenants. He lays stress upon the rule that the trust comes to exist, not because of the intention of the testatrix, but because of the implied agreement of the legatee to carry out that intention; and he distinguishes the cases of Rowbotham v. Dunnett and Tee v. Ferris from the case which he had in hand expressly because of the fact that in those cases the legatee as to whom the devise was held to be good was a tenant in common, and not a joint tenant; and he insists all through his opinion upon the fact that all the legatees in the case before him were joint tenants, and therefore, and for that reason alone, were bound by the tacit acquiescence of one of them. Applying the rule laid down in these two cases, we must hold that, so far as the defendants Bartow and Fairchild are

concerned, the complaint was properly dismissed as to them, and the judgment must be affirmed. But with regard to Mr. Parsons the case is entirely different. He understood the wishes of the testator, and, by acquiescence, agreed to carry them into effect. As to him, his portion of the estate is charged with this trust.

This trust is void because of its indefiniteness. The trust, as expressed by the wishes of the testator, and as found in the will, and as it was attempted to be carried out, is to divide this estate among such incorporated religious, benevolent, or charitable societies as they shall see fit. It is well settled that such a trust as that is invalid. People v. Powers, 147 N. Y. 104, 41 N. E. 432; Fairchild v. Edson, 77 Hun, 298, 28 N. Y. Supp. 401. Where a testator creates a trust which is invalid because it is one which the law will not permit to be carried out, the trust necessarily fails, and the property which is attempted to be bequeathed by the invalid trust goes to the next of kin. O'Hara v. Dudley, 95 N. Y. 403; Springett v. Jenings, L. R. 10 Eq. 488. This must be the result as to the portion of the estate bequeathed to Mr. Parsons. As to him the judgment of the special term must be reversed, and judgment ordered that the portion of the property bequeathed to him was not disposed of by the will, and goes to the plaintiff, as the executrix of the next of kin.

It is perhaps unnecessary to say that there is no claim on the part of anybody that there is any actual fraudulent intent on the part of the executor, or anybody else, to get possession of this property. The attempt is simply to evade the well-settled rules of law which render a bequest void, if it should happen that they were applied to this case. While such an intent, which has for its ultimate end, not private gain, but to devote the property to charitable use, involves no immorality, but the opposite, yet there are grave reasons of public policy why such things should not be permitted. In this particular case there can be no suspicion that any wrong was intended, except an evasion of the law. While an evasion of the law like this involves no moral obliquity, it is the duty of the courts always to condemn it. The fact that the gentlemen who attempted it were, by their position and character, far above any suspicion of attempting to make gain for themselves, affords the greater reason why they should be held to the strictest rules. The thing may just as easily be attempted by some less scrupulous person for mere personal objects, but in the one case as well as in the other the policy of the law requires that such bequests should not be encouraged.

With regard to Dr. Huntington, it is quite clear that' the complaint was properly dismissed. He took nothing under this will, and the plaintiff was entitled to no relief against him whatever. The judgment, as to him, must be affirmed, with costs.

As to the defendants Bartow, Fairchild, and Huntington, the judgment is affirmed, with costs to be paid by the plaintiff.

As to the defendant Parsons, the judgment is reversed, with costs, and judgment ordered that the one-third part of the residuary es-

tate which was bequeathed to him did not pass by the will, and shall be distributed by the executors to the next of kin.

VAN BRUNT, P. J., and WILLIAMS and PATTERSON, JJ., concur.

INGRAHAM, J. (dissenting). I concur with Mr. Justice RUMSEY so far as he holds that when this will was executed there existed between Mr. Parsons, one of the executors, who prepared the will, and Miss Edson, the testatrix, an implied understanding as to her wishes in regard to the property left to her executors, and that she relied, in giving it to him and his co-executors, upon his tacit consent to be governed in the disposition of it by her wishes in the will expressed, and that this brings the case, so far as he is affected, clearly within the cases cited by him in his opinion. I do not concur in his conclusion as to its effect upon the other executors, Messrs. Fairchild and Bartow. By the will in question the testatrix attempted to make a disposition of all her property, dividing the residuary estate among the several charities named by her. Fully appreciating the fact, however, that this disposition of her residuary estate might be invalid, according to the law of this state, an attempt was made by her to evade the result of such illegality by the disposition that she made of her residuary estate in case that contingency should happen. The evidence shows that, if the conclusion arrived at by Mr. Justice RUMSEY is correct, she has been successful, so far as two-thirds of her estate was affected, and that a scheme has been here devised by which a testator, by selecting gentlemen of character and a keen sense of honor, can in all cases render nugatory any provisions of law limiting the disposition that can be made of property by a last will and testament. That the court should find themselves in such a predicament, and feel themselves bound to enforce a will which, considering its provisions and the acts of those selected to execute its provisions, has resulted in an illegal disposition of this property,— a disposition prohibited by the positive law of this state,—seems to me to confess an impotence in the administration of the law entirely unjustified. The position here presented is exactly that presented to the court in Re O'Hara, 95 N. Y. 420:

"If equity will not touch this devise, by putting a trust for the heirs at law and next of kin upon the fund in the hands of these legatees, the road to an evasion of our statutes, and to the temptations of necessity or greed, will be left wide open. While in such cases it has been well said that the court should act with caution, and only upon the clearest proof of the fraud, yet when, as here, the facts are proved beyond reasonable question, we ought not to hesitate. The testatrix did intend an absolute devise to these legatees, on the face of the will; but she did not intend that they should have the resultant beneficial interest, and relied upon their promise to carry its fruits elsewhere. They do not refuse to perform. Although they deny the promise, it is quite possible that they mean to keep it. We are not authorized to say or suspect that they will not. but, if they do, they must inevitably carry out a planned and purposed evasion of our statutes against perpetuities. * * * The principal legatee in this case knew it, and it was distinctly planned between him and the testatrix that her understood and declared purpose, which could not be lawfully carried out by a

devise on the face of the will, should be effected by an absolute devise coupled with his honorable obligation to hold and appropriate the property to forbidden uses. And evasion of the law was the very occasion and object of the absolute devise. Without that, it could not have been suggested without a fraud upon the testatrix; for, if there was no need of it,—if no statute was to be avoided or flanked,—the very suggestion of an absolute devise was fraudulent. * * * Any devise or bequest of this character is dangerous and indefensible. It exposes testators to the suggestion of unnecessary difficulties, as inducements to the artifice of an absolute devise concealing an illegal trust. It exposes the devisee to temptation, and, even when he acts honestly, to severe and unrelenting criticism. It subserves no good or useful purpose. If we sustain it, we admit that any statute may be thus evaded, and that equity cannot redress the wrong."

In this case the evidence goes further, and shows that the testatrix was not mistaken in depending upon those whom she selected as her instruments to evade the law. Shortly after the probate of the will, these executors did carry out, by an evasion of the statute, her wishes. Mr. Bartow, one of the executors, testified that he executed this instrument called a "grant" because he considered that he was carrying out the wishes of Miss Edson, and, when asked whether he felt that he was bound to do what he did with the property, he answered, "I don't think I was legally bound to do it"; and then, when the question was put to him, "But in honor and conscience?" he answered:

"I knew what Miss Edson's wishes were, as expressed in her will, and, if she chose to leave that money for myself, which she did, I consider that it was the part of an honest man to try to carry out her wishes."

Mr. Fairchild, another of the executors and residuary legatees, said:

"I don't think that at any time I had any intention of keeping any of that money for myself. I did not have any such intention."

When asked the question, "Why didn't you keep it, or any part of it, for yourself?" he answered:

"I thought I would be ashamed to. I did not think that was the intent of the testatrix. I thought that her whole purpose was that the portion of her property given to us by the last clause should go to some benevolent objects. Failing it going as she expressed in her will, I felt that her intention was to give this property to us to be disposed of as we thought best for benevolent objects. I did not think that she intended that I should keep any of it for myself. I did not think that she intended that. I think that keeping it for ourselves would have been what I and Mr. Bartow, or either of us, or Mr. Parsons, might well have been ashamed of."

It is impossible to resist the conclusion that all three of these executors considered themselves bound—if not legally, at least morally, and as honest men—to use this property left to them by this will to carry out the illegal disposition that Miss Edson had attempted to make by the will; that to have used this legacy in any other manner would have been a dishonorable act on their part, and one that would have exposed them to disgrace; and that she and Mr. Parsons, when he prepared the will, well knew that this consideration would require that they should join with Mr. Parsons in executing the implied or tacit understanding between Mr. Parsons and the testatrix in pursuance of which this residuary clause was inserted in the will and codicil, and thus became a part of Miss Edson's will. Mr. Justice RUMSEY con-

cedes, in his opinion, that if these three executors had been joint tenants of this property, applying the principle in Re O'Hara, supra, the executors would hold the legacy or devise to them as trustees for the next of kin.    But he holds that as they were tenants in common, and applying the principle stated by Vice Chancellor Sir W. Page Wood in Tee v. Ferris, 2 Kay & J. 366, it was only the share of Mr. Parsons, with whom the implied or positive agreement could be said to have been proved, that was affected.    The terms of the will before the court in the O'Hara Case are not stated in the report.    The nature of the bequest contained in the will is stated by Judge Finch in delivering the opinion of the court, "The testatrix gave to three persons, who were her lawyer, her doctor, and her priest, absolutely, but as joint tenants, the bulk of her estate"; and in that case the only one who had any knowledge of the intention of the testator was, as in this case, the lawyer who drew the will.    I think it can be said, however, that in this case the bequest or devise was not to the executors as tenants in common, but as joint tenants, and thus the principle established by the will of O'Hara applies.    This clause originally appeared in a draft will prepared by Mr. Parsons, and was submitted to the testatrix. That original draft will provided that if, for any reason, any legacy should lapse or fail, "I give and bequeath the amount thereof absolutely to my executors.    In the use of the same, I am satisfied that they will follow what they believe to be my wishes."    If the will, as executed, had stood in this condition, I do not suppose it would be claimed but that the bequest would be one to the executors as a class, and would thus be joint, and not several.    In the will, however, as executed, the clause stands, "I give and bequeath the amount which shall lapse, fail, or not take effect, absolutely to the persons named as my executors."    The rest of the clause is the same, the words interpolated being "the persons named as."    Did the interpolation of these words change the character of this bequest?    It is a canon of construction universally applied that the sole object of a court is to ascertain and enforce the intention of the testator; and we have here before us, in the language in this very will itself, the clearly-expressed intent with which this testatrix used these words when she added to a will which disposed of all her property this clause in question.    What was that intent?    That she, having made certain dispositions of a large portion of her property, about the validity of which there might arise serious doubts, because what she attempted to do might be illegal, wished to provide a method by which such illegal disposition of the property could be consummated, relying upon the honor and integrity of her three executors to accomplish that result.    Was it her intention that these three executors should take this property as tenants in common, as their own property, and dispose of it for their own purpose?    Clearly not.    What she intended to do was to leave this property to her executors, to carry out her intention, if it should appear that that intention was illegal, and could not be carried out by the will.    In other words, it was her intention that her executors should be vested with

the property to make a disposition of it which the law said that she should not make by will, and, to carry out that intention, she created her executors her residuary legatees. Is it not clear that this bequest was not to these executors as tenants in common, not to them as individuals, but as joint tenants, for the purpose of carrying out this illegal testamentary distribution of her property? It seems to me that this was the clearly-expressed intention of the testatrix. The will makes no provision as to sharing the property between the executors; contains no provision as to its going to their representatives in case of their death. It simply says that she gives the property to these persons personally and absolutely, and without limitation or restriction, but with a full confidence that they will use the property in such a manner as to carry out her wishes. Those wishes—the only wishes she expressed, and the wishes that these executors have attempted to carry out—was the illegal disposition of the property that she had attempted in her will. To say that the testatrix intended by this provision to create these executors the owners, as tenants in common, of this property, to be used by them, and to pass to their representatives in the event of their death, would, it seems to me, violate the expressed intention of the testator. If, however, we should feel constrained to hold that these executors took this bequest as tenants in common, I do not think that it would follow that this bequest vested an individual share in each of the executors absolutely, not affected by the trust applied to the share of Mr. Parsons. I think that the principle applied in the case of Russell v. Jackson, 10 Hare, 206, is applicable, and should be applied. There Lord Justice Turner, then vice chancellor, said:

"But, whether Thomas Aston Jackson was present or not, the evidence is, I think, clear that the gift would not have been made to him but for the promise given by William Jackson that the intentions of the testator should be carried into effect; and I fully agree to the principles laid down in Huguenin v. Baseley [14 Ves. 289], followed in many other cases, that no person can claim an interest under a fraud committed by another. However innocent the party may be, if the original transaction is tainted with fraud that taint runs through the derivative interest, and prevents any party from claiming under it."

This case has been somewhat criticised by Vice Chancellor Wood in Tee v. Ferris, supra, and in several other cases, but the will in the case at bar differs substantially from those discussed in the cases last referred to. In none of these cases has it appeared that the bequest to the persons named was intended as a method of evading a statute or rule of law, but such intention of the testator was found in proof outside of the will. In this case it seems that the intention of the testatrix is clearly expressed in the will. Extrinsic evidence was only necessary to show that that intention had been communicated to one of the legatees prior to the execution of the will, so that the will was executed by the testatrix relying upon an implied or tacit understanding that such intention should be carried into effect. And, when such a tacit or implied understanding obviously related to the disposition of the entire residuary estate to the three executors, its acceptance by either of the executors carried with such acceptance an obligation to comply with that tacit understanding. If Mr. Parsons,

when he submitted this will to the testatrix, had said to her, "I agree that, in case any of these legacies are void, I will apply the property coming to me under this bequest to carrying out your intention with regard to this charitable disposition of your property, and that my co-executors will unite with me in such a disposition of all property that passes to them under this bequest," could it be said that either of the executors could have accepted the bequest, with knowledge of this obligation made on their behalf and obtained upon such a representation, and repudiate the obligation? It seems to me clear that they could not; that, accepting the bequest, they would be clearly bound by the conditions upon which it was given, and would ratify the promise made on their behalf. This is just the understanding that the law implies in consequence of the acts of Mr. Parsons in inducing the testatrix to make this will in question. Under the circumstances, the law implies a tacit understanding between Mr. Parsons and the testatrix that this property should go to the executors as executors, not for their own benefit, but, although vesting in them individually, should be applied to carry out the intention of the testatrix. That having been the tacit understanding under which the will was executed, however innocent these two executors may have been of the arrangement between Mr. Parsons and the testatrix, upon accepting the bequest they ratified the understanding between their co-executor and co-legatee and the testatrix which induced the execution of the will; and it is quite evident that this is exactly what the defendants Bartow and Fairchild understood was the condition upon which the bequest to them was made. It is true that they say that they understood there was no "legal obligation," but it seems to me clear that they did understand that the testatrix did not intend that they should take this property as absolute owners for their own benefit, but impressed with an obligation or trust to carry out her wishes, and that, when they accepted it upon that condition, they were bound to apply it in such a way that it would accomplish that intention.

I also concur with Judge RUMSEY in his disposition of the other questions involved, and I therefore think that the judgment entered here should be that the residuary estate of the testatrix not disposed of by the will should go to the plaintiff, as the executrix of the next of kin. I think I should say, also, that I concur with Mr. Justice RUMSEY in saying that these executors have but too faithfully attempted to carry out the trust that the executrix imposed upon them, and that it was the illegal intent of the testatrix to make a disposition of her property prohibited by law, attempted to be carried into effect by her executors, that in my opinion has rendered their action invalid.