(84 Misc. Rep. 299)

### GOLLAND v. GOLLAND et al.

(Supreme Court, Special Term, New York County. February, 1914.)

1. TRUSTS (§ 44*)—SECRET TRUST—SUFFICIENCY OF EVIDENCE.

Evidence, in an action to have a secret trust judicially declared, *held* to show that by oral agreement a secret trust was created for the benefit of two inexperienced and two incompetent children in property bequeathed to two of testatrix's sons, though the language of the will standing alone was insufficient to create the trust, where the permanent affliction of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

two children made it dangerous to vest them with a legal title and rendered inexpedient an express declaration of trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 66–68; Dec. Dig. § 44.*]

2. TRUSTS (§§ 17, 18*)—RIGHT TO ENFORCE—SECRET TRUST CREATED BY ORAL AGREEMENT.

That a secret trust created for the benefit of testatrix's two inexperienced and two incompetent children in property bequeathed to two of her sons was not in writing did not render it unenforceable.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 15–24; Dec. Dig. §§ 17, 18.*]

3. TRUSTS (§ 35*)—RIGHT TO ENFORCE—CERTAINTY OF TERMS.

An oral agreement by two of testatrix's sons that they would hold the property bequeathed to them in trust for her other children exclusively was not unenforceable for want of precision and certainty.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 45–50; Dec. Dig. § 35.*]

4. TRUSTS (§ 35*)—PASSIVE TRUST—VALIDITY.

That a secret trust created by oral agreement for the benefit of other children exclusively, in property bequeathed to two of testatrix's sons, was a passive trust, did not invalidate the devise; the only consequence being that when the trust should be disclosed the statute would execute and merge the legal and beneficial interest.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 45–50; Dec. Dig. § 35.*]

5. TRUSTS (§ 35*)—SECRET TRUST—ORAL AGREEMENT—BINDING EFFECT.

That an oral agreement that property bequeathed by testatrix to two of her sons should be held in trust for the benefit of her other children exclusively was assented to by only one of the two sons did not render the trust unenforceable, where he promised on behalf of his brother, whose agent he assumed to be, and where a close confidential relation existed between testatrix and both sons, especially where the son not assenting accepted the gift and never repudiated the trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 45–50; Dec. Dig. § 35.*]

6. TRUSTS (§ 35*)—SECRET TRUST—ENFORCEMENT AGAINST TRUSTEE IN BANKRUPTCY.

That property bequeathed in secret trust pursuant to oral agreement to two of testatrix's sons for the benefit of her other children exclusively was taken in charge by the trustee in bankruptcy of the two sons did not render the trust unenforceable; the trustee not being a purchaser for value, but taking the estate of the bankrupts subject to all equities which attach to it in their hands.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 45–50; Dec. Dig. § 35.*]

7. WITNESSES (§ 171*)—COMPETENCY—TRANSACTIONS WITH DECEDENT.

In an action to have a secret trust judicially declared in property bequeathed to two of testatrix's sons for the benefit of her other children exclusively, one of such sons was not incompetent under Code Civ. Proc. § 829, to testify for plaintiff as to a personal transaction with his mother; such testimony being adverse and not in furtherance of his own interests.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 707, 710; Dec. Dig. § 171.*]

Action by Israel Golland against Isaac Golland and others to have a secret trust judicially declared. Judgment for plaintiff.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

A. S. Gilbert, of New York City, for plaintiff.

Leon Lauterstein, of New York City, for defendants Isaac Golland, Isaac Golland, Jr., Annie Golland, Amelia Golland, Jacob Golland, and Morris Golland.

Louis F. Doyle, of New York City, for defendant John C. Van Cleaf, as trustee in bankruptcy of Morris Golland and Jacob Golland.

CARDOZO, J. [1] The plaintiff says that a gift in his mother's will, absolute in form, was subject to a secret trust, which he asks the court to declare, and, declaring, to enforce. Fredericka Golland died in September, 1911, the owner of two houses in the city of New York. She left six children. Two of them, Morris and Jacob, were successful business men, possessed, it was then supposed, of ample wealth. Two, a daughter Annie and a son Isaac, had been deaf and dumb from birth, had been judicially declared insane, and were inmates of asylums. Two others, a daughter Amelia, and a son Israel, the plaintiff, were without business experience, the former devoted to her home duties, the latter an employé in a subordinate capacity of his more successful brothers. The dominant personality in the family life was that of Morris Golland. His parents and his brothers and sisters looked to him for guidance in everything. There was a relation of complete dependence and perfect confidence which happily he has not abused. As early as 1907 the terms of the mother's will were the subject of discussion. For many years the Golland family had the counsel of the Hon. Julius M. Mayer, now one of the judges of the United States District Court. Judge Mayer was more than the family adviser; he was also a close friend of Morris Golland. He pointed out the importance that Mrs. Golland should make a will, because if she were to die intestate the title to an interest in the real estate would vest in the incompetent children, and a sale might be impossible. Morris Golland, thus prompted, discussed the situation with his mother. He told her that he and his brother Jacob wished nothing for themselves, that they were already amply provided for, and his mother instructed him to have a will prepared by which the property would go to her husband for life, the remainder on his death to be held for the four other children, who stood the most in need of her modest estate. Her chief concern, as was just and natural, was for the welfare of the two incompetents. Morris reported her wishes to Judge Mayer, who advised that the gift be made in form to Morris and Jacob, subject to their promise, however, to hold it for the exclusive benefit of their brothers and sisters. In this way it was thought that the conveyance of the property would be facilitated; and those members of the family who were inexperienced, as well as those who were incompetent, would thereby be protected. Morris Golland reported this arrangement to his mother. He said to her that Judge Mayer had advised that the only safe way to draw the will was to leave the property to Jacob and Morris, provided they would hold it for the benefit of the others. She said to him:

"If you promise me that you and your brother Jacob will protect the four children, that is satisfactory to me, if you promise me that, and I believe you will."

She was again assured that the gift was made in form to Morris and Jacob for the sole purpose of avoiding complications. The will was then drawn and was sent to Mrs. Golland at her home. Not long afterward she called at Judge Mayer's office about another matter, and he then spoke to her about the will which was still unsigned at her home and explained its purpose. He said to her, in the presence of Morris, that, while the two sons named would hold the title, they would in reality hold it for the benefit of the other children. Again the mother said that the other children, and above all the incompetents, were the chief subjects of her concern, and again she professed her abiding faith that Morris and Jacob would do as they had promised, and that her real purpose would be upheld. She was assured that she had no cause for worry, and that nothing could ever happen that would lead them to be false to their agreement. She was told to notify her counsel when she was ready to execute the will and he would call at her house and witness it. Some years passed and the will remained unsigned. Mrs. Golland had a superstitious fear about making a will, which led her to hold off from signing one. At length, in 1911, her failing health caused Judge Mayer to take up the subject anew. He went to her house, the will was brought out, he told her that it was the will that looked after the four children, and in that faith she signed it. Two days later she died.

The provisions of the will, though they place the legal title in Morris and Jacob, suggest the existence of some undisclosed promise. She appoints them her executors and trustees and directs them to pay the income of her real estate to her husband, Isaac Golland, for life. On the death of her husband, she gives her real estate to Jacob and Morris. If either of them is then dead, one half of the real estate is given to the survivor. The other half in that event is to go to her daughter Amelia and her son Israel, one-quarter to each. She then make this significant declaration:

"I have made this disposition of my property to my sons Jacob and Morris in the event that they survive my husband Isaac Golland, because I have entire confidence in them, and I feel that they will be eminently just and fair in their treatment of my remaining children."

A little more than a year after the mother's death misfortune overtook the sons on whom she had so implicitly relied. In January, 1913, they were adjudged bankrupts. The trustee in bankruptcy has demanded that they execute a conveyance of their interest in this property subject to the trust for the father. They have refused to do so on the ground that they have no beneficial interest, and hold the remainder upon a passive trust for the benefit of their brothers and sisters. One of the brothers, Israel, brings this action that the trust may be judicially declared. The trustee in bankruptcy alone contests his right.

That an agreement was made, as stated by Judge Mayer and Morris Golland, I entertain no doubt. I am not unmindful that such an agree-

ment, asserted for the first time after the bankruptcy of the holders of the legal title, ought to be clearly proved. In this case, however, no claim is made, and none with any justice could be made, that the plaintiff's witnesses have stated anything but the truth, as they recall it. I accept Judge Mayer's testimony unreservedly. It does not need corroboration, but I may point out that it has it, alike in the probabilities of the transaction and in the internal evidence of the will. One finds it difficult to believe that the prosperous sons would have been favored to the exclusion of less fortunate or of afflicted children unless there had been some understanding which would correct the apparent inequality. The provision for the distribution of the property in the event of the death of either Morris or Jacob is significant. In that event, one-quarter is to go to Amelia and one-quarter to Israel, the children who, not being incompetent, could receive with less danger the legal title to the shares that were in any event designed for them. The other half is to go in the event of the death of Morris to Jacob, and in the event of the death of Jacob to Morris. The purpose plainly was that the beneficial enjoyment of that part should be preserved for those that were incompetent. To suppose that the incompetents alone were to be excluded as well from the beneficial enjoyment as from the possession of the legal title is an assumption without justification in the lives and character and relations of the family before me. To all these considerations we must add the statement in the will itself that Morris and Jacob had been given the property because of their mother's confidence that they would be just and fair in the treatment of the others. I concede it to be the law, as urged by counsel for the trustee in bankruptcy, that this language is not sufficient to create a trust. Lawrence v. Cooke, 104 N. Y. 632, 11 N. E. 144; Phillips v. Phillips, 112 N. Y. 197, 19 N. E. 411, 8 Am. St. Rep. 737; Post v. Moore, 181 N. Y. 15, 73 N. E. 482, 106 Am. St. Rep. 495, 2 Ann. Cas. 591. I think it is also true that in ordinary circumstances a court should be reluctant to enlarge the effect of words of mere entreaty or desire by proof that there was in reality a secret agreement that a binding trust should be impressed upon the property. In most cases, the presumption would be that if the testatrix meant to create such a trust she would have said so, and clear evidence should be supplied that some reason existed why such a declaration was inexpedient or impossible. We have that evidence here. The affliction under which two children had been suffering from birth made it dangerous to vest them with the legal title. The testatrix was so advised by her counsel. It supplied the motive for the secret trust. The will, though silent as to the existence of a binding promise, reminds the sons of their mother's confidence, to the end that the sacred obligation which they had assumed might forever be before them.

[2] Holding as I do that the agreement was made as the plaintiff's witnesses have stated it, the question is whether it is capable of judicial enforcement. The counsel for the trustee in bankruptcy says that the trust is void because not in writing. I do not share that view. The principle is now a settled one in this state that where a devise is induced by the promise, express or implied, of the devisee, to devote the gift to a lawful purpose, a secret trust is created; and equity will

compel him to apply the property in accordance with the promise by force of which he procured it. Amherst College v. Ritch, 151 N. Y. 282, 45 N. E. 876, 37 L. R. A. 305; O'Hara v. Dudley, 95 N. Y. 403, 47 Am. Rep. 53; Peters v. Peters, 137 App. Div. 635, 122 N. Y. Supp. 363; Medical College Laboratory v. New York University, 76 App. Div. 48, 78 N. Y. Supp. 673; Id., 178 N. Y. 153, 70 N. E. 467; Edson v. Bartow, 10 App. Div. 104, 41 N. Y. Supp. 723; Id., 154 N. Y. 215, 48 N. E. 541. A court of equity in such cases exerts its power, not merely because there has been a breach of contract, but because the promise has been used as an instrument to induce the promisee to part with his property, so that the retention of it by the promisor in violation of the promise would result in an unjust enrichment and would constitute a fraud. It is not the promise only, nor the breach only, but the promise and the breach combined with the extortion of property from the owner upon the faith of the engagement, which puts the court in motion. Jeremiah v. Pitcher, 26 App. Div. 402, 49 N. Y. Supp. 788, affirmed 163 N. Y. 574, 57 N. E. 1113; McKinley v. Hessen, 202 N. Y. 24, 95 N. E. 32. The testimony in this case makes it clear that the testatrix was induced to execute her will by the assurance that the property would be held for the use of the other children. The trust is therefore enforceable.

[3, 4] The objection is made, however, that, even though a writing be not essential, the trust must be declared with reasonable precision and certainty, so that a court of equity may intelligently decree its execution, and it is said that these requisites are lacking in this case. It does not seem to me to be so. The test, I think, must be this: If the oral agreement, as stated by the witnesses, were, without other change of form, to be reduced to writing, would the court be able to ascertain its meaning with precision and certainty? If so, the fact that it is oral does not render it indefinite. The promise was that Jacob and Morris would hold this property in trust for the benefit of the other children exclusively. I think that promise has a clear and precise meaning. If a written contract had been made between Mrs. Golland and her sons by which, in return for the conveyance, they agreed to hold the land in trust for their brothers and sisters, no court would refuse to enforce the trust for lack of certainty. It is true that the trust is a passive one, and the beneficiaries under our statute have a legal estate of the same quality and duration as their beneficial interest, and have the right to a conveyance of the legal title. Wright v. Douglass, 7 N. Y. 564; Hutchins v. Van Vechten, 140 N. Y. 115, 35 N. E. 446; Wendt v. Walsh, 164 N. Y. 154, 58 N. E. 2; Jacoby v. Jacoby, 188 N. Y. 124, 80 N. E. 676. The fact that the trust is passive does not render the devise illegal. The only consequence is that, when the trust is disclosed, the statute executes it, and merges the legal and the beneficial interest.

[5] The objection is also made that the promise which induced the gift was made by Morris only and not by Jacob, and hence it is insisted that Jacob's interest is not subject to a trust. To dispose of that objection properly it is needful to review the leading decisions. In O'Hara v. Dudley, 95 N. Y. 405, 47 Am. Rep. 53, the gift was to

three persons as joint tenants and not as tenants in common. It was held that in such a situation the promise of one was binding upon the others. The next case to be mentioned is Amherst College v. Ritch, 151 N. Y. 282, 327, 328, 45 N. E. 876, 888 (37 L. R. A. 305). There a gift was made to three tenants in common, and the promise was by one only, but he gave it in behalf of the others as well as for himself. In this situation, the court held that all were bound; and that the legatees, by accepting the gift, ratified and adopted the promise made in their name through which it had been induced. Vann, J., speaking for the court, said:

"Assuming, however, that Mr. Bulkley made no promise, still we think that he was bound, under the circumstances, by the promise made in his behalf, and that he cannot profit by the action of his cotenants in making the promise for him, as that would be a fraud. He was not a purchaser; he furnished no consideration; there was no contract for his benefit; he was in the attitude of accepting a gift pure and simple; but that gift was made in reliance upon a promise given in his behalf. Can he violate the promise and fairly take that which came to him solely on account of the promise, even if it was not made or authorized by him? We think not, because his title came through the promise, and by accepting the gift he ratified the promise. He must repudiate the gift or accept the responsibility. While the cases are not uniform, the weight of authority sustains this conclusion. Hooker v. Axford, 33 Mich. 453; Moss v. Cooper, 1 J. & H. 367; Tee v. Ferris, 2 J. & K. 357; Matter of King's Estate, L. R. 21 Ir. 273; O'Hara v. Dudley, supra."

Next in order is the case of Edson v. Bartow, 10 App. Div. 104, 41 N. Y. Supp. 723; Id., 154 N. Y. 215, 48 N. E. 541. There, as in Amherst College v. Ritch, the gift was to tenants in common, and the promise was made by one only; but the distinguishing feature was that the promisor spoke for himself alone and did not assume to bind the others. This was the controlling element both in the Appellate Division and in the Court of Appeals. There is a very full discussion in the opinion of Rumsey, J., at the Appellate Division, an opinion announced, it should be noted, before the decision of the Court of Appeals in Amherst College v. Ritch. How much may be said in favor of the view that even in such circumstances as those in Edson v. Bartow, the trust is binding on all the legatees, may be seen from the dissenting opinion of Ingraham, J., in that case. I think the case at hand is ruled by Amherst College v. Ritch rather than by Edson v. Bartow, and that for two reasons: In the first place, Morris Golland made the promise not only in his own behalf but also in behalf of his brother Jacob, whose agent he assumed to be; and, in the second place, there was a confidential relation between all the parties—the testatrix and the two sons—which makes the implication of a trust at once the more imperative and the easier. When Mrs. Golland said to Morris that she would sign the will on his promise that both he and Jacob would hold the land for the other children, and he assented, he said in effect that he was giving the promise for himself and Jacob alike. His relation toward Jacob was such that he had the right to believe himself justified in assuming that authority. His testimony is:

"The relation in our family was that my brother, anything I did was always satisfactory to him, regarding wills or property or anything else, and

so I got in the habit that I never even discussed it with him. In the matter of business, he left everything to me for the reason that when I discussed anything with him, he would say, 'Well, do as you like.' "

In view of this relation, the implication of actual authority, or at all events of ratification, may readily be drawn from the acceptance of the gift. To this we must add that Jacob has never repudiated the trust, and that his attitude is one of readiness to fulfill its obligations. But the extension of the trust to Jacob becomes the readier when we consider the confidential relation between the mother and the sons. It is one thing to say that where the legatees are strangers, bound by no confidential relation to the testatrix or to one another, a promise, by one not expressly made in behalf of the others, will bind him who gave it alone. It is a very different thing to say that a promise by a son to his mother, made in his own behalf and in behalf of another son, shall not bind them both when the relation of confidence to be implied from the tie of blood is reinforced by one of habitual and complete dependence by each on the will and judgment of the spokesman. Mrs. Golland had a right to believe, in view of the known facts of the family life, that Morris Golland spoke with authority for his brother as for himself, and that one as much as the other would not betray her confidence. Goldsmith v. Goldsmith, 145 N. Y. 313, 39 N. E. 1067; Allen v. Arkenburgh, 2 App. Div. 458, 37 N. Y. Supp. 1032; Id., 158 N. Y. 697, 53 N. E. 1122; Wood v. Rabe, 96 N. Y. 414, 48 Am. Rep. 640; Jeremiah v. Pitcher, supra. It follows that the interest of both must be declared subject to the trust.

[6] It is not a circumstance of moment that the title has now passed away from the brothers and is vested in a trustee in bankruptcy. He is not a purchaser for value. He holds the estate subject to all the equities that attached to it in the bankrupt's hands. Security Warehousing Co. v. Hand, 206 U. S. 415, 423, 27 Sup. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789. If it would constitute a fraud for Jacob and Morris Golland to repudiate the trust, it would equally be to sanction a fraud for the court to permit the repudiation of the trust by their voluntary assignees.

[7] One other question remains to be considered. The testimony of Morris Golland was received under objection that the witness was incompetent under section 829 of the Code to testify to a personal transaction with his mother. A motion was later made to strike out his testimony on the same ground, and on that motion, with the consent of counsel, decision was reserved. Morris Golland is, it is true, a party; but in testifying in behalf of the plaintiff he is not a person interested in the event. His interest is indeed the other way. By defeating the plaintiff he will maintain the title of the trustee in bankruptcy and thus conceivably establish his own right to some reversionary interest in the estate. By helping the plaintiff he loses the property altogether. A right to commissions, if it exists, is not such an interest as disqualifies (Matter of Folts, 71 Hun, 492, 24 N. Y. Supp. 1052), nor is the possibility that he may survive his brothers and sisters and as heir inherit their estate (Eisenlord v. Clum, 126 N.

Y. 552, 27 N. E. 1024, 12 L. R. A. 836). The law is settled that a party may testify to personal transactions with a decedent unless in so doing he promotes some interest of his own. Brown v. Brown, 29 Hun, 498.

These are the only arguments urged by the trustee in bankruptcy in support of the objection. The point may, however, be made that under Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916, the plaintiff derives his title from, through, or under Morris Golland, and the latter is thus disqualified from testifying in the plaintiff's behalf against a person deriving title from, through, or under the decedent. Rosseau v. Rouss was a case of an executory contract. This is a case of an executed gift. I do not think that the plaintiff derives title from, through, or under Morris Golland. The plaintiff derives title from the testatrix. Where a gift is made to a trustee for the use of another, the fact that the trustee undertakes to fulfill the trust does not make him the source of the beneficiary's title. The source of title is the same whether the trust is declared in the will or is established by word of mouth. The trustee never gained title except in subordination to the trust. Amherst College v. Ritch, 151 N. Y. 282, 324, 45 N. E. 876, 37 L. R. A. 305. Equity does not create a trust, but declares one to which the land has been continuously subject. The plaintiff does not succeed to any title formerly vested in Morris Golland; but Morris Golland continuously held his title for the benefit of the plaintiff. These views make it unnecessary to consider whether other conditions essential to the application of section 829 are present in this case. The motion to strike out the testimony of Morris Golland is denied, and an exception will be noted in favor of the defendant. I may add that if I were to exclude the testimony I should consider the testimony of Judge Mayer sufficient of itself to establish the trust.

Judgment will therefore be rendered in favor of the plaintiff for the relief prayed for in the complaint. Since it was the duty of the trustee in bankruptcy to defend the suit, there will be no costs to either party.

Judgment accordingly.