Arthur G. Klein, J.
This action as pleaded in the third amended complaint is brought to impress a constructive trust upon property received by Grace Oursler under the will of *655 Charles Fulton Oursler and that the defendants be declared to be the trustees for the benefit of the plaintiffs for certain percentages claimed to be due to the plaintiffs.
Findings of fact and conclusions of law have been waived.
The plaintiffs are the children and grandchildren of Charles Fulton Oursler of his first marriage. The defendants are the children of a second marriage contracted by Charles Fulton Oursler and the executors of his estate and the estate of his second wife.
Charles Fulton Oursler married Rose Karger in 1911. There were two children born of this marriage. In 1925 he obtained a divorce from her in Mexico. Three days later, he married Grace Perkins while still in Mexico. Two children were born of that marriage.
The evidence is quite clear that Charles Fulton Oursler maintained parental affection for the children of both his marriages and that he was equally devoted to both sets of children. This is borne out by the testimony of Morris Ernst, the attorney who represented the late Mr. Oursler and his second wife, Grace Oursler, of Henry Denker, an associate, and of John C. Farrar, a book publisher and friend.
For some time prior to March, 1951 both Mr. Oursler and his wife, Grace, concerned themselves with the making of wills and consulted their attorney, Morris Ernst, with respect thereto. They desired to protect the children of both marriages. It was finally determined between them, on advice of counsel, that reciprocal wills should be drawn. On May 161951, they executed reciprocal wills which were identical, except for certain specific bequests. Charles Fulton Oursler and Grace Oursler were named as remainder beneficiary of each other’s estate, with all the children and grandchildren of Charles Fulton Oursler as equal beneficiaries on the death of the survivor of Mr. Oursler or his wife, Grace.
On May 24, 1952 Charles Fulton Oursler died and his will was probated. Grace Oursler, his widow, received his remainder estate. On January 21, 1955 Grace Oursler changed her will and in her new will she made no provision for the children and grandchildren of the first marriage of her late husband. She, in turn, died on December 15, 1955 and her will, made in 1955 was admitted to probate in the Surrogate’s Court, New York County on January 3, 1956.
This action was brought to declare a constructive trust in favor of those of Charles Fulton Oursler’s issue and descendants, who were omitted in the probated will of Grace Oursler.
*656 There is no question in the mind of the court that both Charles Fulton Oursler and his wife, Grace, intended at one time to benefit all of the children of Mr. Oursler, upon the death of the survivor of them. The only point to be resolved is whether this intention can be translated into a solemn promise by Grace Oursler to provide for all the children, a promise upon which her husband relied in making his spouse beneficiary of his remainder estate to the immediate exclusion of his children, the natural objects of his bounty.
The defendants contend: (1) that there was no agreement of any kind as alleged in the complaint; (2) that in any event the alleged agreement is not in writing and, therefore, unenforcible under the Statute of Frauds; and (3) that the testimony of the attorney, Morris Ernst, is inadmissible under sections 353 and 354 of the Civil Practice Act.
Standing alone, the language of reciprocal wills made by two persons closely related such as husband and wife, will not impart a contract on the part of the survivor to fulfil the alleged testamentary plan for ultimate disposition of the property. (Edson v. Parsons, 155 N. Y. 555.) This is a generally accepted principle, but general principles alone cannot determine individual decisions. They can only supply guiding analogies.
Clearly, Charles Fulton Oursler relied on the “ good faith ” of his wife, Grace, to carry out their joint testamentary plan. The court cannot permit the absence of a written agreement to thwart the desires of Charles Fulton Oursler who was the first to die. There is ample precedent for this position.
In the case of Ahrens v. Jones (169 N. Y. 555, 561-562) the court discussed the earlier case of Amherst Coll. v. Ritch (151 N. Y. 282, 323-324) which involved the will of one Fayerweather. The court quotes from the opinion of Vann, J., as follows: “ ‘ If the testator is induced either to make a will, or not to change one after it is made, by a promise, express or implied, on the part of a legatee that he will devote his legacy to a certain lawful purpose, a secret trust is created and equity will compel him to apply property thus obtained in accordance with his promise.’ * * * ‘ The law, not the will, fastens the trust upon the fund by requiring the legatee to act in accordance with the instructions of the testator and his own promise. ’ ”
The principle is firmly established in our jurisdiction that where one obtains a bequest or devise of property upon his representation that he will devote it to the use of one who would otherwise be an object of the legatee’s bounty and he thereafter refuses to put it to the use promised, a court of equity will enforce the obligation by impressing a trust upon the property *657 in favor of the intended beneficiary. (Matter of Buehler, 186 Misc. 306, affd. 272 App. Div. 757, motion for leave to appeal denied 272 App. Div. 794, and cases cited.)
In the case last cited, there is quoted the language of Cardozo, J., in the case of Golland v. Golland (84 Misc. 299, 306): “ ‘The principle is now a settled one in this state, that where a devise is induced by the promise, express or implied, of the devisee, to devote the gift to a lawful purpose, a secret trust is created; and equity will compel him to apply the property in accordance with the promise by force of which he procured it. * * * A court of equity in such cases exerts its power, not merely because there has been a breach of the contract, but because the promise has been used as an instrument to induce the promisee to part with his property ’ * * * ‘It is not the promise only, nor the breach only, but the promise and the breach combined with the extortion of property from the owner upon the faith of the engagement, which puts the court in motion.’ ” (See, also, Herman v. Ludwig, 186 App. Div. 287, affd. 229 N. Y. 544.)
Clearly, the children of Charles Fulton Oursler by his first wife were the natural objects of his bounty. The evidence in the case establishes beyond doubt that the children of both marriages were regarded equally with affection by both Oursler and his second Avife. The making of the reciprocal wills in favor of all the children of both marriages testifies most eloquently that when the mutual wills were executed Grace Oursler promised, at least by implication if not by express commitment, that she would deal Avith the property received by her under the Avill of her husband so that the children of both marriages would share alike in such property in the event of her demise. By the revocation of her reciprocal will and by making a new will solely in favor of her own children she breached her agreement. While it is true that her promise created no express trust, this court, in the exercise of its broad equity power, is called upon to step in to prevent a wrong and to declare that the defendants are trustees for the protection of the plaintiffs who also were the intended beneficiaries under Oursler’s will. As was stated by Mr. Justice Beeveega in the case of O’Boyle v. Brenner (189 Misc. 1058, 1061 mod. on other grounds 273 App. Div. 683, 301 N. Y. 685): ‘ ‘ Under the circumstances, a constructive trust may be declared; for it is a well-settled equitable principle that ‘ * * * where one obtains a bequest or devise of property upon his representation that he would devote it to the use of one who would otherwise be an object of the testator’s bounty and he thereafter refuses to put it to the use promised, *658 a court of equity will enforce the obligation by impressing a trust upon the property in favor of the intended beneficiary * * * * * Equally well established is the rule that neither the Statute of Frauds nor the Statute of Wills prevents the recognition of such a trust, especially where a confidential relation would be abused if there were repudiation without redress [citing Matter of Buehler, 186 Misc. 306, supra] * * * for ‘ * * * the will takes effect as written and proved, but to promote justice and prevent wrong the courts compel the legatee to dispose of his gift in accordance with equity and good conscience. ’ ’ ’
The importance of continuity with the past cannot be doubted, but the court must recognize the importance of rendering justice in this case by appreciating the “equity” factors that enter into it, as opposed to mechanical manipulation of legal concepts.
The defenses based upon the Statute of Frauds are insufficient. There is a patent distinction between express trusts created by agreement of the parties and a trust impressed by the court to prevent a wrong. If the legalistic formalities of the former were to be forcibly imposed on the latter, they would serve only to destroy the equity jurisdiction so very vital to this type of case. The court cannot accept the suggestion that the Legislature intended to outlaw the very fundamental relief afforded by impressing a trust upon assets in the hands of a culpable party. The amendments in 1933 to section 31 of the Personal Property .Law were enacted to prevent assertions of oral claims. However, such claims, though oral, which arise out of promises made to induce the promisee to part with his property so that the retention of the property in violation of the promise results in an unjust enrichment, are not within the purview of the statute.
There remains for consideration, the application made to strike out the testimony of the attorney witness. Mr. Ernst testified that he acted as attorney for both Mr. and Mrs. Oursler, when his office prepared reciprocal wills for them. The conversations he testified to were had with him by both parties in connection with the undertaking in which they were commonly engaged.
The motion made by the defendants to strike out the testimony of plaintiffs’ witness Morris Ernst and his associates or employees is denied. Mr. Ernst is the attorney who prepared the reciprocal wills of Mr. Oursler and his wife, Grace. He acted for both parties in this transaction and the conversations to which he testified were had with him by both parties in connection with the undertaking in which they were commonly *659 engaged. This attorney, who prepared the mutual wills, .was a competent witness to prove the statements of these clients concerning their mutual undertaking. It has frequently been held that the privilege secured by the rule enunciated in section 353 of the Civil Practice Act (formerly Code Civ. Pro., § 835) does not apply to a case where two or more person consult an attorney for their mutual benefit, that it cannot be invoked in any litigation which may thereafter arise between such persons or their descendants, but may be in any litigation between them and strangers (Wallace v. Wallace, 216 N.Y. 28).
All other motions on which decision was reserved are denied with appropriate exceptions.
The plaintiffs have established clearly their right to the relief demanded in this action and judgment is accordingly awarded in their favor.
The foregoing constitutes the decision of the court as required by the provisions of section 440 of the Civil Practice Act. Settle final judgment awarding to the plaintiffs the relief demanded in their complaint.